THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BENJAMIN F. CAMERON, Defendant-Appellant.

Fourth District   No. 4—89—0071

Opinion filed October 5, 1989.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

John B. Leonard, State's Attorney, of Mt. Sterling (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On September 14, 1988, following a jury trial in the circuit court of Brown County, defendant Benjamin F. Cameron was convicted of (1) unlawful possession with the intent to deliver more than 15 grams of cocaine; (2) unlawful delivery of one gram of cocaine; (3) unlawful possession of one gram of cocaine; (4) aggravated battery of a peace officer; (5) unlawful possession of 10 to 30 grams of cannabis; and (6) fleeing or attempting to elude a police officer. He was subsequently sentenced to various concurrent terms of imprisonment with a maximum of eight years for unlawful possession with intent to deliver and was fined a total of $3,168.35.

On appeal, defendant maintains (1) the circuit court denied him his right to confront witnesses against him by limiting cross-examination; (2) prejudicial hearsay was improperly admitted; (3) the jury was improperly instructed regarding the inference of intent to deliver from the possession of contraband in amounts in excess of that for personal use; (4) the sentence for unlawful possession of cocaine with intent to deliver was based upon improper factors in aggravation; (5) the evidence did not support his convictions of either aggravated bat-

tery or fleeing and eluding a peace officer; and (6) he is entitled to credit against the fines imposed. We order sentence credit as later described. Otherwise, we affirm.

The State's evidence at trial showed that between August and September of 1987, Gerald Kempf of the Illinois Department of Criminal Investigations, Marty Winston, a Schuyler County deputy sheriff, and various law enforcement officers of Brown County conducted a surveillance. On August 30, 1987, pursuant to a plan, Mark Volk, an informant with drug charges pending against him, made a telephone call to defendant stating he, Volk, had a prospective cocaine purchaser. Volk and Winston then drove to defendant's house in Mt. Sterling. Kempf and Mt. Sterling Police Chief David Lantz followed in another vehicle. Volk went to the door and knocked. Defendant opened the door and gave Volk an envelope containing a substance later determined to be cocaine. Volk returned to the car. He and Winston then returned to defendant's door and negotiated a price of $75 for the envelope and two other envelopes also containing substances later determined to be cocaine. This was the principal evidence to support the conviction for unlawful possession and unlawful delivery of one gram of cocaine.

The other convictions arose from occurrences on September 2, 1987. The State's evidence described the following chain of events. State Trooper Craig Walker twice stopped a truck driven by defendant. The second time, after Walker indicated he was going to search the vehicle, defendant obtained permission to enter the truck to turn off the motor, but, instead, defendant sped away. Walker was standing next to the truck, and the truck doorjamb struck Walker's wrist, knocking him back a few steps, and causing Walker to require medical treatment. The charge of aggravated battery was based on the injury to Walker. The fleeing and eluding charge was based on defendant's conduct in driving away from Walker.

The State's evidence also showed Winston and Kempf were nearby when defendant drove away from Walker. The three, in separate vehicles, then chased defendant and stopped after a chase of a short distance. A dog was taken along the route defendant had used to attempt to flee. The dog came upon a small bag which contained a substance, later shown to be 28 grams of cocaine. At the time the ground was wet with dew, but the bag was dry. Evidence was presented defendant had admitted to throwing a bag of cocaine from his truck during the chase but maintained the bag was much smaller and contained less.

Defendant did not present any evidence.

Prior to trial, the State filed a motion *in limine* to prevent defendant from presenting evidence or from commenting on a civil case filed by Terry Maltby against Schuyler County, the Illinois State Police, and Winston. The complaint in the case sought damages arising from an alleged misidentification by Winston of Maltby as a person who had delivered a controlled substance to a confidential agent. Defendant contended charges against Maltby had been dismissed after Maltby spent several months in jail. Defendant contended the pendency of the suit showed bias on Winston's part to gain favor from the State by testifying favorably to the State. The circuit court granted the motion *in limine*. Defendant contends this limitation against his cross-examination of an important State witness violated his right to confront that witness.

Defendant cites *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1019, 420 N.E.2d 837, 841-42, in support of his contention the *in limine* ruling was error. There, the circuit court refused to allow an accused to cross-examine a police officer in regard to the fact the officer had previously been suspended by his superiors for improperly drawing his weapon and then filing a false police report. The police officer was a crucial State witness, and defense evidence indicated he may have improperly drawn his weapon at the time of the occurrence giving rise to the charge of attempted murder against the accused in that case. In reversing the subsequent conviction in that case, the appellate court held that the cross-examination should have been permitted. The court reasoned that evidence of the 15 suspensions for improperly drawing a gun showed the officer had a bias to give testimony which would absolve him of a further sanction arising from the case on appeal. The appellate court explained that the evidence was admissible to impeach the witness' credibility but not to show his propensity to commit the conduct for which he had previously been suspended.

▮▮ ▮ The refusal to permit a defendant to impeach a State's witness by evidence of pending but unproved criminal charges to show a bias of the witness has been held to be reversible error. (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526; see also *People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835.) However, no case has been called to our attention where mere evidence of a civil suit against a law enforcement officer charging dereliction of duty unrelated to the case in issue has been held to be proper impeachment. In *Phillips*, the evidence refused concerned the existence of prior suspensions rather than pending charges. Testimony of bias which is remote or uncertain is not admissible. (*People v. Hiller* (1980), 92 Ill.

App. 3d 322, 415 N.E.2d 1202.) Here, any alleged incentive on Winston's part to give favorable testimony because of Maltby's suit was remote and uncertain. The relationship between the instant case and the other public officials involved in the civil case was remote. For these reasons alone, the circuit court properly denied use of the requested evidence.

■ Moreover, the defense also sought to go into the question of whether, in fact, Winston had lied in the case against Maltby. To the extent this would be used to show his propensity to perjure himself here, the evidence was also inadmissible. When testimony of crime is offered to impeach the credibility of a witness, only conviction may be shown. Evidence of the actual commission of the offense is inadmissible. (*Mason*, 28 Ill. 2d at 400, 192 N.E.2d at 837.) To have permitted the introduction of Winston's prior conduct into evidence would have initiated a lengthy side issue, which would have consumed a great amount of time and distracted the jury from the main issue of the case. *People v. Kirwan* (1981), 96 Ill. App. 3d 121, 126-27, 421 N.E.2d 317, 321.

■ In addition, we note defendant objected to the issuance of the *in limine* order but did not preserve any error by the making of a post-trial motion. Had any error resulted, it would have been waived. *People v. Armstrong* (1983), 111 Ill. App. 3d 471, 478-79, 444 N.E.2d 276, 281.

Defendant next argues he was deprived of a fair trial by the admission of hearsay evidence concerning (1) telephone calls from an informant that defendant had recently purchased illegal drugs and was intending to dispose of them because he thought he was being watched by the police; and (2) one side of a telephone conversation, overheard by a police officer, in which the informant allegedly arranged the August 31 drug purchase.

The court allowed Kempf to testify over objections concerning his initial contact with an informant, a later call from the informant that defendant had purchased some cocaine, and that defendant was allegedly concerned the police were watching him, so he would have to dispose of the drugs. The court permitted the testimony with the limitation that the jury consider the evidence only for the purpose of showing how the officer received notice that a transaction was taking place. Defendant maintains that the prejudicial impact of this testimony, however, outweighed the probative value despite the limiting instructions.

■ Various appellate court decisions have held the testimony of witnesses, which would be hearsay if used to prove that the accused

did the things attributed to him by the declarant, to be admissible, as long as the testimony is offered merely for the purpose of explaining police conduct. (*People v. Sanchez* (1987), 163 Ill. App. 3d 186, 516 N.E.2d 556; *People v. Green* (1985), 136 Ill. App. 3d 361, 483 N.E.2d 606; *People v. Munoz* (1982), 103 Ill. App. 3d 1080, 432 N.E.2d 370.) However, the trial court must carefully assess such testimony to ensure that it does not include more than is necessary to explain police conduct. A highly respected evidence text describes the theory upon which out-of-court statements are admitted to explain a course of police conduct and discusses the danger of misuse of such statements:

> "In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted 'upon information received,' or words to that effect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great." McCormick, *Evidence* §249, at 734 (3d ed. 1984).

We agree with the McCormick analysis and the concerns expressed there. This case is an example of when, while enabling the law enforcement officers to explain their presence and conduct, the court permitted testimony replete with improper hearsay. Because of the prevalence of this problem and the difficulties involved, we set forth in detail the manner in which we conclude the court should have handled the hearsay objection imposed here.

It was appropriate to permit Kempf to testify that he had a conversation with his confidential informant who told Kempf that defendant had gone to a tavern in Quincy to pick something up. It was *not* appropriate to permit Kempf to testify that the package to be picked up was cocaine.

It was appropriate to permit Kempf to testify to another conversation with his confidential informant who told Kempf that defendant was at a certain tavern in Quincy, that he had made his pickup, and that he was going to stay and have a beer before leaving. It was *not* appropriate to permit Kempf to testify that the package that defendant picked up was dope.

The above references to "cocaine" and "dope" were in no way necessary to explain police conduct, and, despite the limiting instruc-

tions which the court gave concerning these references, we are concerned that these references would likely be understood by the jury as pertaining to necessary elements of the crime for which defendant was being tried.

■■ The admission of Kempf's testimony containing these references was error. When an objection was first raised to Kempf's testifying about what he was told by the confidential informant, the court should have conducted a hearing out of the presence of the jury to determine both the *scope* of these third-party out-of-court statements and the *need* for the jury to hear them. Had such a hearing been conducted in this case, the court could have directed that the improper portions of Kempf's testimony be deleted, thereby permitting the State to provide its legitimate explanations for police conduct, while protecting the defendant against prejudicial hearsay statements. See *Commonwealth v. Palsa* (1989), 521 Pa. 113, 555 A.2d 808.

Under the circumstances of this case, the error resulting from the admission of the improper hearsay was harmless because of the uncontested and overwhelming nature of the evidence of the factual matters involved in the controlled substance offenses which the hearsay concerned.

Defendant next argues the trial court abused its discretion in giving, over objection, a nonpattern jury instruction regarding permissible inferences which could be drawn from the possession of contraband. That instruction provided:

> "It is a reasonable inference that possession of an amount of contraband in excess of any amount which could be viewed for personal use is possessed with intent to deliver."

This instruction involved the charge defendant possessed, with intent to deliver, more than 15 grams of cocaine. The State contends the instruction is supported by the previously described evidence: (1) a bag shown to contain over 28 grams of cocaine was found along the route defendant fled while being chased by law enforcement officers; and (2) the testimony indicating defendant admitted throwing a bag containing a smaller amount of cocaine during that flight. The State also seeks to support the giving of the instructions by testimony of Kempf that a mere user of such contraband would be unlikely to have more than 3.5 grams on his or her person because of the cost. He further testified that 28 grams of cocaine would have a street value of approximately $2,800.

■■ The instruction was not one contained in Illinois Pattern Jury Instructions, Criminal (2d ed. 1981) (IPI Criminal 2d). Defendant recognizes that the trial court has discretion to give nonpattern instruc-

tions that are simple, brief, impartial, and a nonargumentative statement of the law. Defendant argues that this instruction, however, was argumentative and a misstatement of the law.

▪ We note, initially, that courts have repeatedly held that an intent to deliver may reasonably be inferred where the amount of the controlled substance possessed could not be viewed as designed for personal consumption (see, *e.g.*, *People v. Chrisos* (1986), 151 Ill. App. 3d 142, 147, 502 N.E.2d 1158, 1162; *People v. Schaefer* (1985), 133 Ill. App. 3d 697, 702, 479 N.E.2d 428, 432-33). However, the theory of the IPI disapproves instructions, such as that here, which comment on particular types of evidence except as to those specifically approved. (IPI Criminal 2d No. 3.00.) Even after the decision in *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, an instruction on the well-known inference proclaimed by that decision was included in the pattern instructions only with great reluctance. (See IPI Criminal 2d No. 13.21, Committee Note, at 295.) Notably, the pattern instruction on that subject explained the inference was not mandatory but one which the jury should determine whether to draw. IPI Criminal 2d No. 13.21.

▪ We conclude the instruction in question should not have been given. However, it described an inference which the law permits a trier of fact to draw. In view of the strength of the evidence of defendant's guilt, the giving of the instruction does not require reversal. Moreover, we note that, as with the court's ruling on cross-examination of Winston in regard to civil litigation, here again, defendant failed to preserve any error by including the issue of the instruction in a post-trial motion.

We now turn to the question of the sufficiency of the evidence to prove defendant's commission of the aggravated battery and fleeing or eluding a police officer offenses. Both charges arose from the conduct of defendant on September 2, 1987, when, after being stopped by Walker for a second time, defendant was permitted to get back into the truck so he could shut off the motor, and he then sped away.

We examine first the evidence of defendant's commission of aggravated battery. The statute defining that offense provides, in part, that a person commits an aggravated battery when, in committing a battery, he:

"(6) Knows the individual harmed to be a peace officer, or a person summoned and directed by him, or a correctional institution employee, while such officer or employee is engaged in the execution of any of his official duties including arrest or attempted arrest." (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(6).)

A person commits a battery:

"[I]f he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." Ill. Rev. Stat. 1987, ch. 38, par. 12—3(a).

The indictment alleged defendant acted knowingly in battering Walker, known by defendant to be a peace officer. Section 4—5 of the Criminal Code of 1961 states in part:

"Knowledge. A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct." Ill. Rev. Stat. 1987, ch. 38, par. 4—5.

■■ As is well understood, the State had the burden of proving each element of defendant's guilt beyond a reasonable doubt. The jury determined that proof was made here. We can only overturn that decision if, after examining the evidence in its light most favorable to the State, we conclude no reasonable trier of fact could find that proof had been made. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) Here, the question at issue of the sufficiency of proof concerns the question of the strength of the proof that defendant possessed the mental state required for the offense of aggravated battery.

■■ Proof of the state of mind of an accused is difficult, but an inference arises that a person intends the natural and probable consequences of his or her actions. (*People v. Houston* (1986), 151 Ill. App. 3d 718, 722, 502 N.E.2d 1174, 1176-77.) As we have indicated, at the time of the alleged aggravated battery, Walker was standing beside defendant's truck while the motor continued to run. According to Walker, defendant reentered his truck from the passenger side after having stated he was entering to turn off the motor. The evidence indicated the door on the passenger side remained open while defendant put the vehicle into gear and drove rapidly off while Walker remained at the side of the truck. According to Walker's testimony, one of the

other officers present shouted to defendant, saying "don't do it," just before defendant sped off.

■■ The evidence the passenger side door was open and that Walker was standing next to the truck in the open doorway when defendant suddenly started the truck and sped away is crucial to our decision that the evidence supported the verdict finding defendant guilty of aggravated battery. When this evidence is considered along with the other surrounding circumstances the jury could have found to exist, we conclude a reasonable jury could find beyond a reasonable doubt that defendant was (1) "consciously aware" the passenger side door was open (Ill. Rev. Stat. 1987, ch. 38, par. 4—5(a)); and (2) "consciously aware" Walker was "practically certain" to be hit by some portion of the vehicle when defendant drove off (Ill. Rev. Stat. 1987, ch. 38, par. 4—5(b)). Accordingly, we affirm the aggravated battery conviction.

Defendant also contends he was not proved guilty of fleeing and eluding the police beyond a reasonable doubt, because he stopped initially, after being signaled to do so, fled, drove a short distance, and stopped again.

Section 11—204(a) of the Illinois Vehicle Code provides:

"Any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, wilfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer, is guilty of a Class B misdemeanor." Ill. Rev. Stat. 1987, ch. 95½, par. 11—204(a).

Defendant maintains that to be guilty of violating section 11—204, the State must prove he failed or refused to obey the signal of a police officer to stop. Defendant notes that he stopped each time he was signalled to do so. He concludes, therefore, the State failed to prove an essential element of the crime charged. We disagree.

■■ Section 11—204 of the Illinois Vehicle Code provides the offense is committed when a person having been given a signal to stop the vehicle that person is driving "wilfully fails or refuses to obey such direction, *** or otherwise flees." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—204(a).) The various ways the offense is committed are listed in the disjunctive. We conclude the offense occurs even though the accused obeys the direction to stop but then, before the purpose of the stop is complete, flees. The evidence supported defendant's conviction for a violation of section 11—204 of the Illinois Vehicle Code.

Defendant next contends the trial court abused its discretion in

sentencing him to eight years' imprisonment for possession of cocaine with intent to deliver. The conviction of this Class X felony could have resulted in a term of imprisonment of 6 to 30 years. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1.

In imposing sentence, the trial court noted (1) deterrence was the principal factor in aggravation; and (2) the "harm" involved in this case, in selling drugs, did not relate to the physical harm of an individual but rather to society as a whole, and was a factor to be considered in sentencing. Defendant argues that such "harm" was implicit in the offenses and should not have been considered as an aggravating factor. He also argues that the court overemphasized the need to deter and protect society.

The record in this case, however, does not necessarily indicate that the trial court considered the harm of selling drugs as a factor in aggravation. Rather, the court's remarks of such danger to society were in response to the defendant's argument that no one was harmed. The court did not indicate it was giving a greater sentence because of the harm caused but was possibly rejecting the lack of harm as a mitigating factor. Thus, there was no error in the court's statements.

The record does indicate the court considered the need for deterrence as the only substantial aggravating factor and deemed it to be quite important. Citing *People v. Rhodes* (1986), 141 Ill. App. 3d 362, 363-64, 490 N.E.2d 169, 170, *People v. Huffman* (1979), 78 Ill. App. 3d 525, 529, 397 N.E.2d 526, 529-30, and *People v. Knowles* (1979), 70 Ill. App. 3d 30, 388 N.E.2d 261, defendant maintains a sentencing court errs in considering the need for deterrence as an important factor. The rule relied upon by defendant originates in *Knowles*. We deem that theory to be invalid and overrule *Knowles*.

In *Knowles*, a student had committed arson (Ill. Rev. Stat. 1975, ch. 38, par. 20—1(a)) of two buildings of the college he was attending. The record indicated the defendant (1) was an 18-year-old freshman away from home for the first time; (2) had no prior criminal convictions; and (3) had come from a strong family environment. The sentencing judge noted those redeeming factors but concluded that to avoid depreciating the serious nature of the offense, a sentence of imprisonment was necessary. The court then imposed an indeterminate sentence of 2 to 12 years' imprisonment. This court reversed and remanded for resentencing stating that when a court "acknowledges that the *only purpose* to be served by imprisoning a defendant is to possibly deter others from similar conduct, the sentence of imprisonment must be further reviewed." (Emphasis in original.) *Knowles*, 70

Ill. App. 3d at 35, 388 N.E.2d at 265.

The *Knowles* opinion cited no authority for the rule pronounced. Nor did it refer to *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, where the court held that where a sentencing court had not considered improper matters, a sentence should not be overturned unless the court breached its discretion. The stated *Knowles* rule was followed by the Appellate Court for the Fifth District in *People v. Thomas* (1979), 76 Ill. App. 3d 969, 395 N.E.2d 601, and recited, on occasion, in other opinions. Similarly, in *People v. Huffman* (1979), 78 Ill. App. 3d 525, 397 N.E.2d 526, this court cited *Knowles* in reducing a sentence of imprisonment to probation where the court had stated that the purpose of the sentence was to avoid deprecating the seriousness of the offense. The *Huffman* precedent is nullified by that opinion's reliance upon this court's decision in *People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59, and certain then existing provisions of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1005—5—3.1, 1005—5—3.2, 1005—8—2). In *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, the supreme court reversed that decision and declared much of that legislation unconstitutional. In *Rhodes*, while setting aside a sentence because the court considered necessary statutory elements of the offense as aggravating factors, this court stated that deterrence was a factor which should be considered narrowly.

The lack of logic in a rule which requires review of any sentence where deterrence is considered as the sole aggravating factor is illustrated by the circumstances of this case. The court convicted defendant of an offense which was a Class X felony requiring the imposition of a mandatory term of imprisonment which could be not less than 6 years nor more than 30 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3).) Deterrence is a stated purpose of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1100) and admittedly a proper factor to consider in regard to punishment for other offenses. Here, the sentence imposed was only 33⅓% over the minimum sentence and less than 27% of the maximum sentence, yet, if the stated rule were applied, the court would be required to re-sentence.

■■ After *Perruquet*, the supreme court decision in *Cox* reaffirmed the broad discretion of the sentencing court in imposing sentence. Under that doctrine, a court may logically give reasonable consideration to the need for deterrence as a factor in the imposition of a sentence. Clearly, the consideration given here was reasonable and well within the exercise of discretion. No error occurred in sentencing.

Finally, defendant maintains he is entitled to a $5-per-day credit against his fine for the 11 days he spent in custody awaiting trial. The State agrees he is entitled to such credit. *People v. Joseph* (1988), 176 Ill. App. 3d 636, 531 N.E.2d 432.

Accordingly, for the reasons stated we affirm all the convictions and sentences entered here. We remand to the circuit court of Brown County with directions to credit defendant with the sum of $55 against the fine imposed.

Affirmed and remanded with directions.

McCULLOUGH, P.J., and STEIGMANN, J., concur.