FIFTH DIVISION
November 30, 2007

No. 1-05-0472

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER PEOPLES, | ) | Honorable |
| | ) | John Moran, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GALLAGHER delivered the opinion of the court:

Following a jury trial, defendant Christopher Peoples was convicted of first degree murder and home invasion in connection with the shooting death of Brian Campbell. Defendant's 75-year sentence for the murder included a 25-year enhancement under the "15/20/25-to-life" statutory sentence enhancements in section 5-8-1(a)(1)(d) of the Unified Code of Corrections (730 ILCS 5-8-1(a)(1)(d)(i) through (a)(1)(d)(iii)) (West Supp. 2005). Defendant also was sentenced to a consecutive term of 10 years for home invasion, for a total sentence of 85 years in prison. On appeal, defendant contends that the admission of a police detective's testimony about a statement by a nontestifying party violated his constitutional right to face witnesses against him under the confrontation clause (U.S. Const. amend. VI; Ill. Const. 1970, art. I, §8). For the reasons stated below, we affirm defendant's conviction.

BACKGROUND

Defendant, James Mitchell and Marcel White were charged with killing Campbell. The following relevant evidence was adduced at defendant's trial, which was held simultaneously with that of Mitchell, with separate juries. White was tried separately from defendant and Mitchell.

Ninner Powers, Campbell's wife, testified that at about 8:30 p.m. on May 8, 2002, Mitchell, White and a third man came to the apartment where she lived with Campbell. The men accused her and Campbell of selling drugs for a rival gang. Powers testified that she had known Mitchell since his childhood. Powers also told Chicago police the nicknames of Mitchell and White and identified them in police photographs. She did not know the third man, who, according to her account, shot Campbell three or four times.

Powers described the third man to police as an African-American male in his twenties with brown eyes, dark hair and a dark complexion and wearing a black coat. Later that evening, Powers gave a more specific description, stating that the gunman had an "afro" hairstyle and a medium complexion and was between 5 feet 10 inches and 6 feet tall and weighed between 200 and 220 pounds. Powers also told police that the man had a stocky, muscular build and either had a gap in his teeth or a missing front tooth.

Powers viewed a police photo array on May 17, 2002, but did not identify anyone. On August 15, 2002, Powers was shown a second photo array and identified defendant as the shooter. She also identified defendant in a police lineup on September 6, 2002.

The defense presented the testimony of defendant's girlfriend, brother and sister-in-law that defendant was elsewhere on the night of the offense. Those witnesses also testified that

defendant did not resemble the description of the third offender that Powers gave to police. The witnesses stated that defendant had a gold tooth and that he never wore an "afro" hairstyle. Defendant testified, *inter alia*, that he lived two blocks from the crime scene but denied involvement in the shooting. He acknowledged that he had a space between his teeth.

This appeal centers on the testimony of Chicago police detective John Halloran and his description of his interview of Marcel White. Detective Halloran testified that, shortly after the shooting, Powers told him she had known two of the offenders for about 20 years and that their nicknames were "Pooh Butt" and "Duke." Powers also provided police with the address of "Duke." Detective Halloran knew "Pooh Butt" to be Mitchell. Using that information, Detective Halloran searched police department records and retrieved the name of Marcel White ("Duke"). Detective Halloran also retrieved photographs of Mitchell and White that Powers identified.

Detective Halloran stated that on May 11, 2002, three days after the shooting, he learned that White had been arrested. Detective Halloran's testimony continued:

"MR. GOUTOS [Assistant State's Attorney]: Did you speak with Marcel White?

A. I did.

Q. After speaking with Marcel White, did you have an opportunity to then put together a photo array?

A. I did.

Q. When you put that photo array together, can you tell us how it was that you came to put certain pictures in there?

3

A. After speaking with Marcel White, myself and other partners went to the computer data base in an attempt to identify the third suspect through the portion of a name of Chris and of the fact [*sic*] that he either lived or had been arrested in the immediate area of the crime. We were able to come up with Christopher Peoples who lived at 5026 South Union, which is only a few blocks from the incident.

Q. And did you place that photo in the photo array?

A. Yes, we did."


ANALYSIS

On appeal, defendant asserts that the admission of Detective Halloran's testimony violated the rule set out in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). In *Crawford*, the United States Supreme Court analyzed the confrontation clause, which ensures a defendant the right to confront the witnesses against him. U.S. Const. amend. VI; Ill. Const. 1970, art. I, §8. The Court reasoned that the statement of an "accuser" to a government officer is akin to sworn courtroom testimony. *Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 192-93, 124 S. Ct. at 1364. The safeguards set out in *Crawford* allow the admission into evidence of such a testimonial statement by a witness who is not present at trial only if (1) the witness is unavailable; and (2) the defendant had the opportunity to cross-examine the witness at the time of the statement. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

Defendant argues that Detective Halloran's testimony resulted in the admission of an

inadmissible hearsay statement by White that the third person involved in the crime was named "Chris" and that "Chris" lived in or was arrested in the area of the shooting. Defendant contends that due to the manner in which those statements were admitted, his counsel could not cross-examine White, and he asserts that the testimony "improperly bolstered" Powers' account of the offense.

We first address whether defendant has forfeited review of this issue. Issues raised on appeal are preserved for review by objecting during trial and filing a written posttrial motion raising the alleged error. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). Defendant concedes that he did neither, nor did he seek a limiting instruction as to the testimony, which will be more fully discussed below. However, defendant asks us to consider his assertions under the plain error doctrine, which allows a court to consider a forfeited error that "affects substantial rights" in two circumstances. *People v. Herron*, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467, 475 (2005); see also 134 Ill. 2d R. 615(a).

This court may consider a forfeited error "in order to preclude an argument that an innocent person was wrongly convicted" when the evidence was so closely balanced that a guilty verdict may have resulted from the error and not from consideration of the evidence. *Herron*, 215 Ill. 2d at 178-79, 830 N.E.2d at 475. Secondly, a court may review a forfeited claim for plain error to preserve the integrity of the judicial process "where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *Herron*, 215 Ill. 2d at 179, 830 N.E.2d at 475. However, before applying either of those tests, we consider whether error occurred, because if the admission of Detective Halloran's testimony did not constitute error,

1-05-0472

there can be no plain error.  See *People v. Green*, 225 Ill. 2d 612, 622, 870 N.E.2d 394, 400 (2007).

We therefore turn to defendant's contentions that the detective's testimony violated *Crawford*.[1]  We note that the Illinois Supreme Court recently began a *Crawford* analysis by stating that the threshold question in a confrontation clause analysis is whether an out-of-court statement was "testimonial."  *People v. Stechly*, 225 Ill. 2d 246, 279, 870 N.E.2d 333, 354 (2007).  That certainly is the initial consideration in cases where the confrontation clause is clearly implicated.  However, it appears useful, at least for purposes of this case, to determine at the outset whether the relevant portion of Detective Halloran's testimony involving White was hearsay.  Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted.  *People v. Tenney*, 205 Ill. 2d 411, 432-33, 793 N.E.2d 571, 584-85 (2002).  Hearsay statements are excluded from evidence primarily because of the lack of an opportunity to cross-examine the declarant.  *People v. Jura*, 352 Ill. App. 3d 1080, 1085, 817 N.E.2d 968, 974 (2004).

Here, if an out-of-court statement made by White was offered for the purpose of proving that defendant was the gunman, the confrontation clause protects defendant's right to cross-examine White, because the confrontation clause prohibits the use of hearsay evidence.  See *People v. Purcell*, 364 Ill. App. 3d 283, 294, 846 N.E.2d 203, 212 (2006).  However, testimony about an out-of-court statement that is being offered for a purpose other than to prove the truth of the matter asserted is not hearsay.  *People v. Williams*, 181 Ill. 2d 297, 313, 692 N.E.2d 1109, 1118 (1998).  Admissible nonhearsay does not implicate the confrontation clause.  *Crawford*, 541

---

[1] *Crawford* was decided in March 2004.  Defendant's trial took place in December 2004.

6

1-05-0472

U.S. at 60 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1370 n.9 (the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"); see also *Tennessee v. Street*, 471 U.S. 409, 414, 85 L. Ed. 2d 425, 431, 105 S. Ct. 2078, 2081-82 (1985).[2]

Therefore, we consider whether the testimony of Detective Halloran was offered for its truth. Detective Halloran testified that he spoke with White after White's arrest. Detective Halloran testified that he then searched a police computer database for a person named Chris who had lived or had been arrested in the area of the Campbell shooting. The detective then testified that his computer search revealed a "Christopher Peoples who lived at 5026 South Union, which is only a few blocks from the incident." Detective Halloran testified that he placed a photo of defendant in a photo array that was shown to Powers and that she identified defendant as the person who shot Campbell.

The "explanatory exception" to the hearsay rule allows the admission of statements that explain the progress of a police investigation under the rationale that such evidence is not offered for its truth. *People v. Sample*, 326 Ill. App. 3d 914, 920, 761 N.E.2d 1199, 1204 (2001). Such statements can be "offered for the limited purpose of showing the course of a police investigation

---

[2] In *Street*, the defendant argued that his confession was a product of coercion and was derived from the confession of his accomplice, Clifford Peele. *Street*, 471 U.S. at 411, 85 L. Ed. 2d at 429, 105 S. Ct. at 2080. The Supreme Court held that Peele's confession was admissible nonhearsay because it was offered to show its effect on the defendant's confession, not to demonstrate what happened at the murder scene, and, therefore, the introduction of Peele's confession raised no confrontation clause concerns. *Street*, 471 U.S. at 413-14, 85 L. Ed. 2d at 430-31, 105 S. Ct. at 2081-82.

7

where such testimony is necessary to fully explain the State's case to the trier of fact." *Jura*, 352 Ill. App. 3d at 1085, 817 N.E.2d at 974. In such a case, "[a] police officer may not testify to information beyond what was necessary to explain the officer's actions." *People v. Edgecombe*, 317 Ill. App. 3d 615, 627, 739 N.E.2d 914, 924 (2000). Such testimony is not hearsay because it is within the officer's personal knowledge. *Sample*, 326 Ill. App. 3d at 920, 761 N.E.2d at 1204.

Defendant relies on *People v. Gacho*, 122 Ill. 2d 221, 522 N.E.2d 1146 (1988), for the general proposition that a police officer cannot testify about the substance of a conversation with a third party in the course of an investigation. However, defendant fails to acknowledge that the testimony in *Gacho*, which was found permissible, was comparable to that offered here, if not more directly implicating.

In *Gacho*, the officer testified that he spoke to one of the victims at the hospital and that he and his partner began to look for "Robert Gacho," the defendant. *Gacho*, 122 Ill. 2d at 248, 522 N.E.2d at 1158-59. The trial court denied defense counsel's motion for a mistrial based on the officer's hearsay testimony identifying Gacho as one of the offenders. *Gacho*, 122 Ill. 2d at 248, 522 N.E.2d at 1158-59. The Illinois Supreme Court affirmed the admission of the officer's testimony, stating that although any testimony as to the substance of the officer's conversation with the victim would be improper hearsay, the officer's given testimony "was not of the conversation with [the victim] but to what [the officer] did and to investigatory procedure." *Gacho*, 122 Ill. 2d at 248, 522 N.E.2d at 1159.[3]

---

[3] The supreme court in *Gacho* went on to note, however, that it was error for the prosecutor to state in closing argument that the officer learned the defendant's name from the victim at the hospital, though the court held that did not rise to the level of reversible error.

1-05-0472

Indeed, *Sample* distinguished the permissible "description of the investigative process" from the impermissible "disclosure of the substance of an investigative conversation." *Sample*, 326 Ill. App. 3d at 921, 716 N.E.2d at 1205. An officer's testimony that he or she acted "upon information received," or similar language, is sufficient to legitimately invoke this explanatory exception. *Sample*, 326 Ill. App. 3d at 921, 716 N.E.2d at 1205, quoting *People v. Cameron*, 189 Ill. App. 3d 998, 1004, 546 N.E.2d 259, 263 (1989), quoting E. Cleary, McCormick on Evidence §249, at 734 (3d ed. 1984). For example, a police officer can testify that he had a conversation with an individual and acted on information from that exchange. *Sample*, 326 Ill. App. 3d at 920, 716 N.E.2d at 1204. The court further explained:

"Balancing the need for police to explain their investigative process against defendants' right not to have the highly prejudicial statements of a codefendant introduced as hearsay is our ultimate goal. This can be accomplished only when the officer does not reveal the substance of a conversation with a codefendant and merely outlines the steps taken in a police investigation." *Sample*, 326 Ill. App. 3d at 921, 761 N.E.2d at 1205.

Defendant argues that the State attempted to use the testimony of White's description of the third suspect to corroborate Powers' own testimony about her identification of defendant as the gunman. He asserts that the detective's testimony included "substantive aspects of the conversation between Halloran and White."

The general line of the State's questioning of Detective Halloran involved how

_____

*Gacho*, 122 Ill. 2d at 249, 522 N.E.2d at 1159.

9

defendant's photograph was included in a photo array and identified by Powers. On the night of the shooting, Powers gave police a detailed physical description of the third offender other than White and Mitchell, whom she knew. Detective Halloran spoke with White upon his arrest on May 11, 2002, three days after the shooting. White implicated a person named Chris who lived in or had been arrested in the neighborhood where the shooting occurred.

Detective Halloran testified that using those criteria, he performed a computer search and eventually learned the name of defendant, who lived at an address a few blocks from the incident. Detective Halloran's testimony did not indicate that White had identified defendant in the shooting; rather, it established that White implicated someone who fit specific criteria that likewise applied to defendant and that from those criteria, police narrowed their investigation and eventually focused on defendant. "Testimony describing the progress of an investigation is admissible even if it suggests that a nontestifying witness implicated the defendant." *People v. Simms*, 143 Ill. 2d 154, 174, 572 N.E.2d 947, 955 (1991).

Detective Halloran's testimony was not offered to show that White specifically identified defendant to police, but rather to demonstrate the course of events over several months that led to defendant's arrest. Detective Halloran did not testify that White mentioned defendant's full name. Indeed, it is reasonable to conclude, as the State suggests, that White did not provide Detective Halloran with defendant's name on May 11, 2002. Had White given a full name, the detective would not have had to search the police database with a partial name or, furthermore, wait more than three months before he presented Powers with a photo array on August 15, 2002, that included defendant's picture.

Because Detective Halloran's testimony was not offered for its truth, but rather to show the course of the police investigation that led to defendant's arrest, the evidence in question was not hearsay and did not violate *Crawford*. The admission of Detective Halloran's testimony did not constitute error, and, therefore, it cannot be considered to have constituted plain error. See *Green*, 225 Ill. 2d at 622, 870 N.E.2d at 400.

A recent opinion of this court, *People v. Suastegui*, 374 Ill. App. 3d 635, 643-44, 871 N.E.2d 145, 152 (2007), addressed a *Crawford* issue and reached the same result upon similar facts but by using a different route to its ultimate conclusion. That case concluded that the statement of a police officer that an individual had corroborated the account of the State's main witness did not implicate the confrontation clause. The court reasoned that the officer's statement was not "testimonial" under the meaning in *Crawford* because it was offered to show the course of police investigation of the shooting and was "not offered to prove any issue, but was responsive to [defense counsel's] questions about how the police investigation proceeded." *Suastegui*, 374 Ill. App. 3d at 644, 871 N.E.2d at 152.

Defendant likens this case to *People v. Armstead*, 322 Ill. App. 3d 1, 748 N.E.2d 691 (2001), which we do not find analogous. In that case, which was decided before *Crawford*, the police officer testified that a person who did not testify at trial told him that the defendant was the shooter. *Armstead*, 322 Ill. App. 3d at 12, 748 N.E.2d at 701. The court found the admission of that statement to constitute plain error because, due to the closeness of the evidence, the testimony could have affected the outcome. *Armstead*, 322 Ill. App. 3d at 12-13, 748 N.E.2d at 701-02. Here, in contrast, White did not identify defendant to the detective as the shooter but

merely provided identifying information that eventually resulted in defendant's arrest. We also find *People v. Flournoy*, 336 Ill. App. 3d 739, 744-45, 784 N.E.2d 353, 358 (2002), on which defendant also relies, to be distinguishable; there, the State conceded that the pertinent testimony regarding the defendant's identity was offered for its truth.

Here, Detective Halloran's testimony regarding White was not offered for its truth but was presented to explain the course of the police investigation, and, therefore, the testimony was not hearsay. Testimony detailing the course of a police investigation is admissible if it is offered for the limited purpose of explaining why the police conducted their investigation as they did or why they arrested the defendant. *Armstead*, 322 Ill. App. 3d at 12, 748 N.E.2d at 701.

Defendant further contends that the jury considered the testimony for its truth because it was not given a limiting instruction. A panel in the Second District of the Illinois Appellate Court has held, in a *Crawford* case, that without a limiting instruction, the jury is presumed to have considered the statement for its truth. See *Purcell*, 364 Ill. App. 3d at 295, 846 N.E.2d at 213. Furthermore, defendant points out that a limiting instruction was given in many of the cases on which the State relies, like *People v. Simms*, 143 Ill. 2d 154, 572 N.E.2d 947 (1991).

We note, however, that defense counsel did not raise an objection at trial, as did the defense in *Simms*, and seek a ruling from the trial court on the admissibility of the testimony. Counsel also did not include this matter in a posttrial motion or request a limiting instruction. We do not conclude that the absence of a limiting instruction in this case transforms the testimony of Detective Halloran into hearsay. Such a holding would have required a *sua sponte* instruction by the trial court indicating the limited use of the detective's testimony. We decline to place such an

onerous burden on the trial court given the lack of an objection by the defense. See *People v. Fontana*, 251 Ill. App. 3d 694, 701, 622 N.E.2d 893, 899 (1993) (defendant's failure to tender jury instruction on limited use of other-crimes evidence forfeits any future objection to absence of such an instruction). Moreover, as we discuss below, defense counsel's election not to object to the testimony was reasonable.

We also note that another division of the First District recently considered a *Crawford* issue in *People v. Feazell*, No. 1-05-1065 (October 31, 2007) (modified on denial of rehearing), concluding that the defendant was denied her rights under the confrontation clause. However, that opinion is clearly distinguishable on its facts. There, the police detective's testimony included statements by a co-defendant named Banks that the officer repeated to the defendant while interrogating her. *Feazell*, slip op. at 7-10. The officer testified as to numerous statements made by Banks which the court concluded, in effect, allowed Banks to speak by way of the officer. *Feazell*, slip op. at 7-10. The court reasoned that the officer's testimony "placed Banks' version of the events and Feazell's alleged knowledge of those events squarely before the jury." *Feazell*, slip op. at 17. In the instant case, no such testimony was presented.

Defendant further asserts that, in closing argument, the prosecution referred to White's statements to Detective Halloran and therefore improperly emphasized to the jury that White's information was the basis for Powers' identification of defendant as the gunman. We have concluded that Detective Halloran's testimony was properly allowed as a description of the police investigation, and our review of the complained-of portions of the State's closing argument reflects that the prosecutor's remarks did not extend beyond a description of that testimony.

Defendant next argues that the jury's request to see a copy of White's statement establishes that the jurors considered Detective Halloran's testimony about White's identification of defendant for the truth of its contents. The record indicates that shortly after beginning its deliberations, the jury submitted the following request:

"Can we see Marcell [*sic*] White's statement, prior conviction photos, Antonio

Rogers' statement. Also, was handgun recovered? Also, were there statements

from Tiny or Head? Also, when was picture actually taken of the defendant

Peoples from the photo array dated August 15th?"

The trial court responded, with the agreement of counsel on both sides, that the jury heard all of the evidence and should continue to deliberate. The jury's request involved several pieces of information, and we cannot conclude that the request revealed a reliance on any one statement or photograph over another. Moreover, the court denied the jury's request to see the documents during its deliberations.

Lastly, as an alternative to his prior contentions, defendant argues that his trial counsel was ineffective for failing to preserve an objection to Detective Halloran's testimony. Defendant argues that because his counsel failed to object to the testimony regarding White, the jury was allowed to hear the testimony as substantive evidence and the State was allowed to rely on it as proof of defendant's culpability. To support a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and, furthermore, that counsel's actions resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064

14

1-05-0472

(1984).

It was reasonable for defense counsel not to object to the detective's testimony, which, as we have concluded, fell within a well-established exception to the rule against hearsay. "[W]here evidence is admissible at trial, defense counsel is not required to perform the useless act of objecting to this evidence." *People v. Jackson*, 357 Ill. App. 3d 313, 323, 828 N.E.2d 1222, 1232 (2005). Even if defense counsel had objected and the court had excluded that portion of Detective Halloran's testimony, our confidence in the jury's verdict is not affected. The remaining evidence, including Powers' testimony and her identification of defendant as the gunman, was sufficient to support a finding of guilt.

CONCLUSION

The State did not violate defendant's rights under the confrontation clause by offering Detective Halloran's testimony about the investigation and the information provided by Marcel White. Because no error occurred, we reject defendant's assertion that we must review the admission of the testimony as plain error.

Accordingly, we affirm defendant's conviction. As part of this judgment, we grant the State's request to assess defendant $100 as costs for this appeal.

Affirmed.

FITZGERALD SMITH, P.J., and O'MARA FROSSARD, J., concur.