NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250735-U

NO. 4-25-0735

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 24, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| BENJAMIN R. CALLICUTT, | ) | No. 24MT463 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Colby G. Hathaway, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court
Justices Zenoff and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's actions fell within the conduct prohibited by the fleeing or eluding statute and no plain error occurred during sentencing.

¶ 2    Following a jury trial, defendant Benjamin R. Callicutt was convicted of fleeing or attempting to elude a peace officer (625 ILCS 5/11-204 (West 2024)), failing to carry or display a driver's license (*id.* § 6-112), and not having a rear license plate light (*id.* § 12-201(c)). He was sentenced to 12 months of conditional discharge. In this direct appeal, he argues that the fleeing or eluding statute does not encompass his conduct and that the trial court erred in its consideration of mitigating factors during sentencing. For the reasons that follow, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4    The issue on appeal stems from a September 9, 2024, traffic stop. At defendant's

jury trial, officer Joshua Lane from the Kewanee Police Department testified that he initiated a traffic stop on a vehicle driven by defendant. Lane verified that there was body-worn camera footage of the incident, and it was subsequently admitted into evidence. Lane's testimony and the body-worn camera footage depicted the following events. After defendant's vehicle pulled over, Lane approached defendant and explained that he initiated the stop because there was no rear license plate light. Defendant handed Lane his insurance information and then began to insist that the missing license plate light was a "made up reason" to initiate the stop for harassment, and he questioned whether he should report the matter to Lane's supervisor. Lane insisted that he did not fabricate a reason to stop defendant and was not harassing him; he then asked for defendant's driver's license. Defendant refused to provide his license, name, or date of birth. A back-and-forth occurred between the two on the necessity of defendant providing identification. Defendant continued to claim there was no reason for the traffic stop and that he was being harassed. After Lane informed defendant he was under a legal obligation to provide his name or face obstruction charges, defendant gave Lane his name.

¶ 5        After identifying himself, defendant stated, "you have a nice day because you have no reason to stop me." Lane responded that defendant was "going to wait until I finish up my paperwork and come back." Defendant then provided his middle initial and date of birth upon request. Defendant then began to roll up his window as Lane stated, "I'll be right back with you. Stay here." The video of the encounter shows that defendant's window was not fully shut but remained partially open when Lane began walking away while telling defendant to stay there.

¶ 6        Lane returned to his squad car and watched as defendant drove away from the stop. Lane radioed dispatch to explain that defendant had left the scene of a traffic stop and was probably driving home. Lane said that he was going to follow defendant and arrest him. Defendant was

eventually cited for fleeing or attempting to elude a peace officer, not having a license plate light, and not providing his identification.

¶ 7 The jury convicted defendant of all three offenses, and the matter proceeded to sentencing. At the sentencing hearing, the State asked for a sentence of 12 months of conditional discharge, with 30 days in county jail stayed pending compliance with the conditions of discharge and a fine for each count. The State also tendered defendant's driving abstract, which contained a 2017 conviction for a Class B misdemeanor speeding 26 to 34 miles per hour above the speed limit, along with convictions for other petty traffic offenses in 2018, 2019, 2021, and 2022. Defense counsel cited defendant's "relatively clean driving record," as well as the circumstances of the traffic stop, and asked the trial court to impose a six-month term of supervision on the conviction for fleeing or attempting to elude.

¶ 8 In announcing defendant's sentence, the trial court stated it had considered the evidence submitted, along with mitigating and aggravating factors. It found that no mitigating factors applied and "that the sentence is necessary to deter others from committing the same crime." It then imposed a sentence of 12 months' conditional discharge on the charge of fleeing or attempting to elude, and it imposed fines on the other two offenses.

¶ 9 Defendant filed a posttrial motion arguing that his sentence was excessive. At the hearing, defendant contended that the conviction resulted in suspension of his driver's license, loss of his job, and the inability to pay his bills. Defendant asked the trial court to reconsider the sentence of conditional discharge and to instead impose an 18-month term of supervision. Defendant did not argue that the court failed to consider factors in mitigation. The court denied the motion.

¶ 10 This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12          Defendant presents two arguments on appeal. First, he contends that his conduct

cannot sustain a conviction for fleeing or eluding under the plain language of the statute. Second,

he argues that the trial court erred in failing to consider factors in mitigation during sentencing.

We address each point in turn.

¶ 13                              A. Fleeing or Eluding

¶ 14          We begin with defendant's argument that his conduct on the evening of September

9, 2024, cannot support a conviction under the fleeing or eluding statute. Initially, the parties

dispute the appropriate standard of review.

¶ 15                              1. *Standard of Review*

¶ 16          Defendant argues that the issue presented should be reviewed *de novo* because it is

an issue of statutory interpretation. To that end, he insists this is not a matter of the sufficiency of

the evidence, as he does not dispute the evidence in this case. The State contends that we should

review this matter as if defendant was challenging the sufficiency of the evidence. After reviewing

defendant's argument, he advances an argument based purely on statutory interpretation as applied

to the uncontroverted facts of this case, and he contends that the facts do not satisfy the statutory

definition of the offense charged. Accordingly, our review is *de novo*. See *People v. Jones*, 2023

IL 127810, ¶¶ 21-22 (noting the difference between the standard of review for statutory

interpretation and a challenge to the sufficiency of the evidence).

¶ 17                              2. *Statutory Interpretation*

¶ 18          Defendant concedes that he did not remain at the scene of the traffic stop as

directed, but he argues that his disobedience did not satisfy the statutory requirements of fleeing

or eluding. The fleeing or eluding statute provides, in pertinent part,

"Any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, wilfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer, is guilty of a Class A misdemeanor. The signal given by the peace officer may be by hand, voice, siren, red or blue light. Provided, the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue lights which when used in conjunction with an audible horn or siren would indicate the vehicle to be an official police vehicle." 625 ILCS 5/11-204(a) (West 2024).

¶ 19 Defendant asks that we find that the facts here do not fall within the offense as defined in the statute. He also argues that, based on the rule of lenity, any ambiguity in the statute must be resolved in his favor. See *People v. Gutman*, 2011 IL 110338, ¶ 12 ("Pursuant to the rule of lenity, ambiguous criminal statutes will generally be construed in the defendant's favor.").

¶ 20 The cardinal rule of statutory construction is to give effect to the intent of the legislature, as best demonstrated by the plain language of the statute. *Chapman v. Chicago Department of Finance*, 2023 IL 128300, ¶ 28. When engaging in statutory construction, we view the statute as a whole and " 'may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another.' " *Id.* ¶¶ 28, 29 (quoting *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 23). If we find that the plain language of the statute clearly and unambiguously articulates the legislature's intent, we will not resort to other aids of construction. *Id.* ¶ 29.

¶ 21    Despite defendant's request for this court to construe the statute, he acknowledges the existence of caselaw that has already found that the statute does, in fact, apply to a situation such as this.

¶ 22    In *People v. Cameron*, 189 Ill. App. 3d 998 (1989), this court evaluated the same argument presented here. The defendant in that case initially pulled his vehicle over when officers attempted to initiate a traffic stop. *Id.* at 1001. The officer who initiated the stop informed the defendant he was going to search the vehicle. *Id.* The defendant asked for and received permission to turn the vehicle off, but instead of doing so, sped away in the vehicle; he was then charged with, and convicted of, fleeing or eluding based on leaving the scene of the traffic stop. *Id.* On appeal, the defendant argued that the State failed to prove him guilty of fleeing or eluding beyond a reasonable doubt because he initially complied with the traffic stop and brought his vehicle to a stop before he fled. *Id.* at 1008. This court reviewed the statute and found,

> "The various ways the offense is committed are listed in the disjunctive. We conclude the offense occurs even though the accused obeys the direction to stop but then, before the purpose of the stop is complete, flees. The evidence supported defendant's conviction for a violation of section 11-204 of the Illinois Vehicle Code." *Id.*

See also *People v. Arrendondo*, 2023 IL App (2d) 220084, ¶ 33 (accord).

¶ 23    Defendant argues that *Cameron* failed to sufficiently conduct a plain language analysis, which he says would have inescapably led to a conclusion that "the fleeing or attempting to elude a peace officer statute does not clearly indicate whether it should apply to a situation where a driver complies with the officer's initial directive to stop a vehicle but leaves the scene of

the stop before it has concluded." According to defendant, this ambiguity would lead to an interpretation in his favor.

¶ 24        We disagree. As explained, the statute then and now criminalizes the failure to stop after receiving "a visual or audible signal by a peace officer" to do so but willfully "fails or refuses to obey such direction" or "otherwise flees or attempts to elude the officer." 625 ILCS 5/11-204 (West 2024). Defendant's interpretation, which is narrowly focused on the statute's requirement of a "stop," would effectively permit a driver to stop for just an instant, then speed away. A momentary cessation of motion may constitute a "stop" according to the laws of physics, but such a narrow view of the statute would frustrate its purpose. There are constitutional limitations which prevent an otherwise legal traffic stop from being unduly prolonged, none of which are advanced here. See *Illinois v. Caballes*, 543 U.S. 405, 407-10 (2005) (discussion of delay occasioned by a "dog sniff" of a stopped vehicle). Regardless of a potential legal limit on the duration of a stop, the stopped driver does not have the freedom to decide that the officer's command to stop has somehow grown stale and ineffective. A driver's duty to comply with a lawful directive to stop his vehicle extends to *remaining* stopped—and not fleeing—until the business of the stop has concluded.

¶ 25        Defendant also argues that the *pari materia* doctrine calls for us to interpret the subject statute differently in light of a different one. See *People v. Taylor*, 221 Ill. 2d 157, 161 n.1 (2006) (noting the doctrine provides "that when two statutes deal with the same subject, they will be considered with reference to each other to give them a harmonious effect"). He contends that the elements of aggravation under the fleeing or eluding statute (625 ILCS 5/11-204.1 (West 2024)) do not implicate "a situation where a driver stops when signaled to do so but prematurely leaves the scene." Whether defendant's conduct fails to trigger an aggravating factor, however, is

simply not pertinent to the question of whether his conduct satisfies the elements of the underlying offense without aggravation (*i.e.*, the offense of which he was convicted).

¶ 26    In a similar vein, defendant argues that a different and more specific statute applies to the circumstances of this case. The obedience to police officers statute provides,

> "No person shall wilfully fail or refuse to comply with any lawful order or direction of any police officer, fireman, person authorized by a local authority to direct traffic, or school crossing guard invested by law with authority to direct, control, or regulate traffic. Any person convicted of violating this Section is guilty of a petty offense and shall be subject to a mandatory fine of $150." *Id.* § 11-203.

He argues that a more specific statute on a topic controls over one that is more generally worded.

¶ 27    As a canon of statutory interpretation, where two statutes appear to be in conflict, the more specific controls over the more general. *In re Craig H.*, 2022 IL 126256, ¶ 26. However, when statutes appear to conflict, they must be construed in harmony if possible. *Id.* Here, defendant articulates no *conflict* between the statutes at all, only that they may sometimes overlap. Prosecutorial discretion allows the State to choose the charges brought against a defendant when more than one offense encompasses the conduct alleged. See *People v. Johnson*, 2019 IL 123318, ¶ 44 (quoting *People v. Burlington*, 2018 IL App (4th) 150642, ¶ 32). The fact that the conduct alleged could be charged as an offense other than that chosen by the prosecutor " 'has never been a valid reason for removing the discretion of the prosecutor to decide which offense, if any, to charge.' " *Id.* Defendant's argument on this point lacks merit.

¶ 28    Accordingly, the plain language of the fleeing or eluding statute encompasses the conduct of prematurely leaving a traffic stop based on the facts of this case.

¶ 29                                B. Sentencing

- 8 -

¶ 30 Defendant also argues that the matter should be remanded for a new sentencing hearing due to the trial court finding that no statutory factors in mitigation applied when determining the sentence. The State points out that defendant has forfeited the issue for review, as it was not advanced via a contemporaneous objection or posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) ("Both a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphases omitted.)). Defendant acknowledges the argument has been forfeited and asks that we analyze the issue under the plain error doctrine.

¶ 31 The plain error doctrine allows a reviewing court to ignore procedural forfeiture and review unpreserved errors when

> " '(1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so egregious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Johnson*, 2023 IL App (4th) 210662, ¶ 47 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

A trial court has broad discretion when imposing a sentence and we will reverse that determination only when it abuses that discretion. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005).

¶ 32 Defendant here argues that the evidence at the sentencing hearing was closely balanced, invoking the first prong of the plain error doctrine. He specifically argues that the trial court failed to consider three factors in mitigation that he contends apply, namely, that he (1) neither caused nor threatened serious physical harm to another, (2) did not contemplate that his

criminal conduct would cause or threaten serious physical harm to another, and (3) had no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime.

¶ 33 Regarding the first two factors in mitigation, "[t]he plain error rule does not allow reviewing courts to consider all forfeited errors." *People v. Johnson*, 2024 IL 130191, ¶ 42. Rather, the error complained of must be clear or obvious. See *Johnson*, 2023 IL App (4th) 210662, ¶ 51 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). " 'The plain error doctrine is not a backdrop to catch merely arguable issues that could have been raised in the trial court. The error had to be manifest or patent.' " *Id.* (quoting *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 17). The claims regarding whether defendant's criminal conduct caused or threatened serious physical harm to another and whether he contemplated his actions would do so are arguable issues that require factual development to determine the weight to be applied in mitigation. Defendant failed to do so in the trial court. In fact, there is an absence of evidence concerning what took place or what defendant was thinking when he left the scene of the traffic stop before it concluded. Moreover, claiming that the evidence was closely balanced in an evidentiary vacuum on these points is speculative at best. See *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) ("Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion."); *People v. Lopez*, 229 Ill. 2d 322, 344 (2008) ("[T]he appellant bears the burden of providing a reviewing court with a complete record sufficient to support his claims of error, and any doubts that arise from the incompleteness of the record will be resolved against the appellant."). Given that these are arguable issues that should have been developed in the trial court, they are not amenable to plain error review.

¶ 34 The third factor, defendant's limited criminal history, was expressly considered by the trial court. Defendant attempts to minimize the evidence relevant to this factor, arguing that his criminal history was "almost non-existent," that he had no criminal history except for those violations present on his driving abstract, and he had a "relatively clean driving record." It is plain that the court considered the factor and did not find that it deserved to be afforded any weight. Defendant acknowledges the existence of evidence on this factor that could support the court's reasoning, but he essentially asks us to give greater weight to this factor. It is well established that this is not a function of our review. See *People v. Clark*, 2024 IL 127838, ¶ 76 (noting a court of review "must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently").

¶ 35 Accordingly, we must honor defendant's procedural default, as no plain error occurred.

¶ 36                                III. CONCLUSION

¶ 37 For the reasons stated, we affirm the trial court's judgment.

¶ 38 Affirmed.