2023 IL App (4th) 210662

NO. 4-21-0662

FILED

March 3, 2023
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| DESEAN W. JOHNSON, | ) | No. 20CF4 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Raylene Grischow, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Turner and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant Desean W. Johnson was convicted of aggravated domestic battery, domestic battery, and aggravated battery following a jury trial. The evidence at trial showed there was an altercation at a New Year's Eve gathering between defendant, his girlfriend, her two sons, and another individual. On appeal, defendant contends that his statutory and constitutional rights to a speedy trial were violated due to procedures implemented by the Sangamon County circuit court following the onset of the COVID-19 pandemic. Defendant also alleges that the admonishments he received when deciding to proceed *pro se* were insufficient under supreme court rules. He also claims that the trial court erred in refusing to tender to the jury a self-defense instruction. Finally, defendant claims there was sufficient cumulative error during the proceedings to warrant reversal of his conviction. For the reasons that follow, we affirm.

¶ 2                                I. BACKGROUND

¶ 3        Defendant was arrested in the early hours of January 1, 2020, after police responded to an altercation at the home of his paramour, Erica Murray, who was hosting a New Year's Eve gathering. The State charged defendant with one count of aggravated domestic battery (720 ILCS 5/12-3.3 West 2020)), three counts of aggravated battery (*id.* § 12-3.05(f)(1), (a)(5)), and one count of domestic battery (*id.* § 12-3.2(a)(2)). The indictments alleged defendant committed these offenses by strangling and stabbing Murray, causing bodily harm to Murray's son J.H. by cutting him with a knife, and strangling Kenisha Davis, Murray's friend.

¶ 4        At his arraignment, defendant was informed of the charges against him as well as their potential penalties. On January 9, 2020, defendant appeared with his appointed public defender and demanded a preliminary hearing. The State moved to continue the matter, and defendant objected, asserting his right to a preliminary hearing. The matter was continued. There were two more hearings in January 2020, at which defendant demanded a preliminary hearing and the State moved to continue the matter, alleging that it was unable to locate or subpoena the arresting officer. The State was granted continuances over objection at each hearing.

¶ 5        On January 29, 2020, the State filed a grand jury indictment. The next day, defendant appeared with counsel. The State explained the possible sentences for defendant in relation to each count in the indictment. Defense counsel entered a plea of not guilty and demanded a jury trial. Defendant began to voice his displeasure with appointed counsel. The court explained that the matter had been assigned to another judge and the appropriate remedy was to file a motion with the assigned judge.

¶ 6        At a status hearing conducted February 10, 2020, defense counsel explained that defendant had given him two motions to file in the case but that he had just been assigned to the matter and wanted a continuance to review the file and the motions. Defendant immediately

interjected, "Oh, no. I want a speedy trial. I want a speedy trial." While attempting to schedule another hearing date, defendant again insisted on a speedy trial. Counsel explained he was not prepared to try the case and the State explained the grand jury transcript had not been returned. Counsel informed defendant that he had the opportunity to go *pro se*, but otherwise, counsel was not prepared to proceed to trial. Defendant then began arguing the merits of his motion to dismiss the grand jury indictment to the court. The following exchange then occurred.

"THE COURT: I'm going to give your attorney the continuance. We're going to put this on March 23rd. If you're not happy with that, you can hire your own counsel, or you can go *pro se*.

THE DEFENDANT: Okay. I'm not happy with that. I'm not happy with that.

MR. REISER [(DEFENSE COUNSEL)]: She just gave you the two options.

THE DEFENDANT: Okay. So whatever you gotta do. I don't want the March 23rd court date, I want a speedy trial. That don't sound like 120 days to me. If I have to go *pro se*, then that's what it gotta be."

The court struck the order granting the continuance and scheduled a hearing for the following day to admonish defendant on the consequences of proceeding without counsel.

¶ 7 The next day, defendant appeared and almost immediately began arguing the substance of two motions to dismiss that defense counsel had not filed. In addressing his request to proceed *pro se*, defendant admitted he wanted to be represented by counsel but his public defender had court appearances preventing him from proceeding as quickly as he desired. The court explained that counsel had multiple jury trials scheduled in front of defendant's case and had

- 3 -

only just received discovery in this case. Defendant then took issue with the fact that counsel was not arguing his motion to dismiss. The court explained that being represented by counsel meant the attorney would decide what motions would be filed in the case. Counsel had not had a chance to review the motion and was not prepared to argue it. The court again admonished defendant that, if he wanted to file and argue the motion at that moment, he would need to go *pro se*. The hearing then devolved into defendant arguing the merits of his motion to dismiss. Eventually, defendant agreed to retain appointed counsel, and the matter was set for status. Before the hearing concluded, defendant attempted to obtain the prosecutor's personal information for a tort claim he was planning to file. The court directed him to file a request under the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2020)).

¶ 8 At a status hearing on March 3, 2020, defense counsel advised the court that he had reviewed defendant's proposed motions and had met with him in person to discuss the case. Following that conversation, defendant expressed to counsel his desire to represent himself. Defendant complained to the court that counsel was incompetent, lazy, and had too busy of a schedule and asked the court to find a public defender who would "work harder." The court responded, "In no way do I want you to go *pro se*." After a lengthy discussion, the court finally admonished defendant pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), explaining the charges he faced; the minimum and maximum sentence of each offense, including the mandatory supervised release terms and whether the sentences would run consecutively or concurrently; and that he had the right to be represented by counsel. Defendant stated that he understood the admonishments. When the court explained that he would be treated as if he were an attorney and would need to comply with applicable trial rules, defendant began to express doubt about his decision. The court offered to schedule another hearing so that defendant could consider

- 4 -

the decision, but defendant declined. The court then began to admonish defendant pursuant to a local court document titled "waiver of right to counsel." Defendant again began to question whether he wanted to proceed *pro se*, and the court stated, "this is not a good avenue for you to take. You just need to let Mr. Reiser do his job. So I'm going to ask you again: Do you want to go *pro se* or do you want to continue with Mr. Resier as your attorney? Or you can hire private counsel." Unsure of his decision, defendant once again began arguing counsel needed to file his motion to dismiss. The court then directed defendant to consider what had been discussed and continued the matter.

¶ 9 When defendant appeared in front of the trial court three days later, he initially indicated he wished to proceed without counsel. The court again admonished him on the nature of the charges he faced and the minimum and maximum sentences. The court then asked defendant if he understood the consequences he was facing. Defendant replied, "Fourteen years, 85 percent, yes." The court also admonished defendant he would be at a substantial disadvantage proceeding without counsel and would not be able to complain on appeal he received ineffective assistance of counsel. Defendant took issue with that assertion and began arguing with the court. The court replied, "You have a competent attorney who has been appointed to represent you. Just because you disagree on tactical decisions isn't a sufficient reason to appeal going *pro se*." Once the court finished admonishing defendant, he stated that he wished to continue with appointed counsel.

¶ 10 As is by now well known, the COVID-19 pandemic was well underway by April 2020, and the Illinois Supreme Court entered a series of administrative orders in response. The first such order directed circuit courts to implement procedures to minimize the impact of the pandemic while still providing access to justice and continuing to hear essential court matters and proceedings. *In re Illinois Courts Response to COVID-19 Emergency*, Ill. S. Ct., M.R. 30370 (Mar.

17, 2020). Another order quickly followed, allowing for the chief judge of each circuit to continue trials for 60 days and until further order of the court; the order further provided that, in criminal matters, "any delay resulting from this emergency order shall not be attributable to either the State or the defendant for purpose of section 103-5 of the Code of Criminal Procedure of 1963 [citation]." *In re Illinois Courts Response to COVID-19 Emergency/Impact on Trials*, Ill. S. Ct., M.R. 30370 (Mar. 20, 2020). The supreme court then amended the previous order providing for "[continuances] of trials until further order of the court." *In re Illinois Courts Response to COVID-19 Emergency/Impact on Trials*, Ill. S. Ct., M.R. 30370 (Apr. 3, 2020).

¶ 11　　　　　On April 3, 2020, the judge conducting the hearing—who happened to be the presiding judge of the circuit court of Sangamon County—held a telephonic status hearing. During that hearing, the trial court stated:

> "[U]nder the circumstances that are facing our society and specifically our justice system, our Supreme Court has authorized for trial courts to grant continuances. These continuances are not held against the State; they're not held against the Defendant. They are entered on Order of the Court. This Court will enter an order today continuing your case. The time frame this court is setting is within sixty days of today's date."

The court continued the matter to May 18, 2020.

¶ 12　　　　　The day after defendant's hearing, the Illinois Supreme Court entered another amended order, providing:

> "The Chief Judges of each circuit may continue trials until further order of this Court. The continuances occasioned by this Order serve the ends of justice and outweigh the best interests of the public and defendants

in a speedy trial. *Therefore, such continuances shall be excluded from speedy trial computations contained in section 103-5 of the Code of Criminal Procedure of 1963* [citation] and section 5-601 of the Illinois Juvenile Court Act [citation]. *Statutory time restrictions in section 103-5 of the Code of Criminal Procedure of 1963 and section 5-601 of the Juvenile Court Act shall be tolled until further order of this Court*." (Emphases added.) *In re Illinois Courts Response to COVID-19 Emergency/Impact on Trials*, Ill. S. Ct., M.R. 30370 (Apr. 7, 2020).

¶ 13 At the May 2020 hearing, the presiding judge again continued the matter, citing the supreme court's order on COVID-19 and the fact a trial at that time was impossible. Defendant started complaining about his appointed counsel, stating counsel "don't want to litigate this case" and "[he] ain't worth—" before the court went off the record. The court continued the matter over defendant's objection, stating it was "the best that this Court can do under the circumstances."

¶ 14 Defendant appeared before the presiding judge again on July 9, 2022. The court explained that it had docketed cases that were older than defendant's for a priority trial list. Pursuant to the authority granted by the Illinois Supreme Court, the court continued the matter over defendant's objection.

¶ 15 On August 26, 2020, the trial court held a status hearing and entertained arguments on defendant's motion to dismiss. Defense counsel could not meet with defendant prior to the hearing to have an affidavit signed because the county jail was on lockdown due to the pandemic. After hearing arguments on the motion to dismiss, the court denied the motion. When discussing further scheduling, the court stated that, in light of the pandemic, the matter was going to be continued, and

"the presiding judge has an administrative order in effect and according to that administrative order both parties have to answer ready for trial then you have to have my permission and then we have to run it up the pipeline to the presiding judge and we have to get his permission in order to proceed to trial. Right now all the Covid cases in Sangamon County are increasing. We're having record numbers of cases daily and the presiding judge does not want to call in a bunch of jurors, risk having everyone in a small room, and being exposed to this deadly virus and so he has not authorized us to proceed with the trial as we had planned."

¶ 16 Against the advice of counsel, defendant then addressed the trial court. Defendant complained that his trial date continued to be pushed back and then objected to his own motion that was just argued, claiming it was not the motion he wanted on file and that his appointed counsel was operating under a conflict of interest and "working for the Sangamon State's Attorney's Office." Defendant requested appointed counsel outside of the public defender's office. The court stated that defendant could retain private counsel but appointed counsel outside the public defender's office was not an option. The court then misspoke and stated that defendant previously went *pro se* during pretrial proceedings. Defendant quickly clarified, "I've been admonished two different times I never went *pro se*." The matter was continued over objection.

¶ 17 On October 2, 2020, the trial court informed defendant there was a 2015 case going to trial and that it took precedence over his case. Defendant objected, and the court noted, "Because of Covid, we do not have more than one courtroom available. We only have one courtroom that is set[ ]up that allows for the social distancing and all that." Defense counsel then discussed defendant's motion for new "competent" counsel. Defendant stated, "I want to go *pro se* today."

The court stated it was not that easy and apologized for the case not going as planned, "but the older cases take precedent [*sic*]." The court scheduled a hearing for October 21, 2020, to hear the motion for new counsel. Defendant again interjected, stating "I want to go *pro se*." The court directed defendant to file his motion and it would be discussed at the next hearing.

¶ 18 At the next court hearing, defendant appeared with private counsel, so the trial court relieved the public defender's office of its appointment. Appointed counsel stated that he had tendered all discovery to defendant's new attorney. New counsel then requested a continuance to meet with defendant and become familiar with the file, so the matter was continued to November 30, 2020. At that hearing, counsel again requested a continuance to January 19, 2021, and then again to March 29, 2021.

¶ 19 At the March 2021 hearing, defendant asked the trial court to address a motion he filed alleging subornation of perjury and prosecutorial misconduct. The court refused to address the motion at that time, as it was a pretrial call. The court stated the motion would be addressed on April 9, 2021. Defendant asked if the continuance would count against him, and the court advised that it would not, as "[t]he speedy trial clock is not in effect now pursuant to Supreme Court Orders." Defendant directed defense counsel to file the motion.

¶ 20 Prior to the April 9, 2021, hearing, defense counsel filed a motion to withdraw. At the hearing, counsel explained defendant wanted him to file a motion to dismiss the grand jury indictment, alleging the indictment was secured through prosecutorial misconduct and perjury. Counsel refused to file the motion. Defendant proceeded to file the motion in counsel's name. Due to the conflict of interest, counsel could no longer represent defendant. The trial court granted counsel's request to withdraw. Defendant then began to question the court as to why counsel was allowed to withdraw and about the merits of the motion to dismiss the grand jury indictment. The

court interrupted, explaining that the State sought to consolidate an order of protection proceeding into the felony case. The court instructed that defendant had to proceed *pro se* on the order of protection because it was a civil matter, and the court could not appoint an attorney for civil matters: "[t]hat right is only for criminal matters." The hearing then devolved into a discussion of whether private counsel had agreed to represent defendant in the civil matter. Defendant asked for three hours to file a written rebuttal to the State's request for an order of protection. The State presented its argument for the extension of the order of protection, and the trial court found a *prima facie* case had been established. The court gave defendant leave to file a response and continued the matter. Defendant then requested a separate hearing date on his second amended motion to vacate the order of protection that was separately filed outside the felony matter. The court asked if defendant wanted to stand on that motion or needed time to file a separate response. Defendant requested time to file a separate response. The court then asked if defendant wanted the public defender's office reappointed. Defendant replied, "I mean, you have to."

¶ 21        Appointed counsel appeared for defendant at the April 12, 2021, hearing. Defendant immediately began complaining about appointed counsel, contending that there was a conflict of interest. Counsel requested a continuance to June 21, 2021. Defendant began asking the court about a supporting record so he could file an interlocutory appeal, stating, "I am putting the court on notice too because [the clerk] might play around and not send it to you."

¶ 22        On April 21, 2021, the trial court held a hearing to consider defendant's rebuttal to the State's request for an order of protection. After hearing argument and reviewing the pleadings, the court granted the State's motion. Defendant then requested a hearing to vacate the order of protection. Frustrated with the proceedings, defendant returned to his cell. The court stated that a date to hear defendant's motion to vacate would be set at the next hearing.

¶ 23    On May 20, 2021, the trial court held a hearing to clear up any outstanding motions. Defendant had refiled his motion for new "competent" counsel. He alleged that appointed counsel was engaged in a conspiracy with the state's attorney's office. Defendant began to argue that both private and appointed counsel refused to file certain motions on his behalf. The court interjected:

> "And it seems we have the same problem. You do not listen to your attorneys. Your attorneys are skilled attorneys with education. They know what they're doing. They have the right to determine what motions to file and what motions not to file.

> You have the right to either be represented by counsel or not to be represented by counsel. So if you want the Public Defender's office to represent you, then you need to listen to your attorney and their advice. If you do not want to do that, then you can proceed *pro se* or obtain private counsel. Do you understand that?"

Defendant indicated he understood. Defendant had also filed multiple pleadings requesting a substitution of judge, sanctions, and to dismiss the grand jury indictment. All of those pleadings were stricken, as appointed counsel refused to adopt them. Regarding a trial date, the court admonished defendant that there was a limited number of courtrooms and trials were already scheduled out to July 2021. Defense counsel requested the court set a July 26, 2021, trial date. Defendant again began arguing for new counsel. After the court stated that the matter had already been ruled on, defendant continued arguing the matter. When the court asked defendant to "be quiet," defendant responded, "You shut up." Defendant was removed from the courtroom, and the case was set for status on June 21, 2021, with a July 12, 2021, trial date.

- 11 -

¶ 24    On June 8, 2021, the trial court held a hearing on defendant's motion to proceed *pro se*. Defendant's motion expressed his desire to proceed without counsel pursuant to his right under the sixth amendment of the United States Constitution (U.S. Const., amend. VI). The court admonished defendant using the local court document for the waiver of the right to counsel. The document contained 10 warnings for those wishing to represent themselves. Generally, the document highlighted the fact that defendant would be at a severe disadvantage representing himself and would have to comply with the rules governing a trial. When the court was almost finished reviewing the document, defendant attempted to shift the focus to a motion for additional discovery he wanted to file. The court continued admonishing defendant, explaining, "A lot of times I like to say to people, if you were having an operation on your arm and you didn't like the doctor, you're not going to do the operation yourself. Am I right?" After making sure defendant understood that he would be at a severe disadvantage moving forward, the court allowed defendant to proceed *pro se*. The trial court did not repeat its prior admonitions about the nature of the charges or the minimum or maximum sentences he faced. The court continued the matter for a different judge to hear defendant's motion to substitute judge.

¶ 25    Following the denial of defendant's request to substitute judge, the parties appeared on June 21, 2022, for a pretrial hearing. Defendant immediately stated, "I have a number of motions and some evidence to disclose to the State." The trial court directed defendant to file the motions with the clerk and noted a separate hearing would have to be set. The court then asked, "Are you ready to proceed to trial, or do you want to have your motions heard first?" Defendant replied that his motion to dismiss had to be heard and that the State "has to answer that motion." The focus then turned to discovery disputes. The court set a status on June 30, 2021, for the parties to work out discovery disputes and hear defendant's motions. Defendant then stated, "We

supposed to have a trial on June 28th." The court replied, "Well, you said that you wanted to hear your motions first prior to trial. So, I am setting your motions." After reviewing the docket to take stock of defendant's pending motions and in light of the discovery disputes, the court continued the matter to June 30, 2021, on defendant's motion.

¶ 26     At the June 30, 2021, hearing, the trial court began to whittle away at defendant's pending motions. First, the court addressed an amended motion for sanctions and then a successive motion for sanctions. There was also a second amended motion to dismiss the grand jury indictment, a motion to reconsider judgment denying vacatur of the order of protection, and a successive motion to vacate the order of protection. The initial motion for sanctions was taken under advisement, but the rest of the motions were denied. Following the denial of the successive motion to vacate the order of protection, defendant stated he was going to file a motion to reconsider and an interlocutory appeal.

¶ 27     The trial court then turned its attention to the numerous motions for additional discovery, a motion *in limine*, and a notice of intent to offer evidence. The court stated it had not read those pleadings and needed to schedule another hearing on them. The court began to schedule a subsequent hearing date and was reviewing the pending motions when defendant informed the court that he had just filed a motion to quash arrest. After reviewing the motion to quash in court, the State advised that the police officer against whom the motion was directed was on military leave in Africa. The conversation turned to how to present the testimony of the officer while he was on leave. The State suggested it could just show the body camera footage, to which defendant objected. It became clear the officer would not be present on July 12, 2021, for a hearing. Defendant quipped that the issue of the missing witness was the State's problem and not his.

Defendant advised the court he would be filing motions to reconsider on all the judgments rendered during the hearing. The matter was continued.

¶ 28 At the next hearing, defendant presented a motion to reconsider the trial court's judgment denying the motion to dismiss the grand jury indictment. The State also advised that defendant filed another motion for additional discovery and that the police officer required to move forward on defendant's motion to quash arrest was available to testify. The court, again, began to whittle away at outstanding motions. When discussing a trial date, the State commented:

> "I mean, I think we still have some bigger issues here before we can decide on the July 12 date. I mean that sincerely. I mean, the motion to quash is a dispositive motion. *** I haven't even had a chance to read this motion to reconsider yet. It's just been handed to us. I don't know if he's planning on filing any other motions this week, Judge. He mentioned something about an interlocutory appeal."

The court admonished defendant that continuing to file motions would further delay his trial date. Defendant then asked for the supporting record to accompany his interlocutory appeal. The court asked defendant if he recalled the State reviewing the minimum and maximum sentences he faced the day he went *pro se*. Defendant stated that the sentencing range had changed per his conversations with the State and that he was now only facing a maximum of seven years. The court then reviewed the nature of the charges, the minimum and maximum sentences, the mandatory supervised release terms, and that any sentences would run concurrently. The court then determined that it still had a pending motion to reconsider and a motion to quash arrest. The matter was continued "pursuant to the Supreme Court [order] on tolling speedy trials."

¶ 29        At the August 2, 2021, hearing, the State began by questioning whether defendant was going to file any more motions, as this would make it inappropriate to set a trial date. When the trial court asked defendant whether he was going to file any other motions, defendant said that he would not and was ready for trial. Defendant was once again admonished regarding the nature of the charges he faced and possible sentencing; he responded that he understood the charges and penalties he faced.

¶ 30        On August 4, 2021, the parties had a long discussion on subpoenaing witnesses, with defendant eventually hurling expletives at the trial court and expressing a desire to proceed to trial. On August 6, 2021, the State informed the court that Murray and her minor child had tested positive for COVID-19. The State suggested a joint motion, continuing the trial for two weeks. Defendant rejected the idea of a joint motion and objected to a continuance. Defendant then began assailing the State, alleging he was not given enough notice regarding who was being called to testify at trial. In response, the court asked if defendant needed a continuance. Defendant responded, "I just want to go on the record as objecting to not being given sufficient time to prepare a defense. That's it." After the court inquired several more times whether defendant needed a continuance, he answered ready for trial. The court found that the State had shown a compelling reason to continue the matter and set a hearing for August 23, 2021.

¶ 31        On August 21, 2021, the trial court received a letter from defendant's appointed attorney on an unrelated federal criminal charge. The letter stated that counsel had expressed to defendant the importance of being represented by an attorney and advised that defendant would be requesting counsel to represent him for the remainder of the state court proceedings. On August 24, 2021, defendant wrote to the court requesting the appointment of counsel from outside the

public defender's office, arguing that any attorney appointed from within the public defender's office would be operating under a conflict of interest.

¶ 32    The trial court addressed the letters at the August 30, 2021, hearing, asking defendant if he wished to have appointed counsel. Defendant stated he only sent the letter because he promised his attorney in the federal matter that he would, but defendant felt "it would take too long for [counsel] to get ready for my case so I want a speedy trial date as soon as possible." The court continued to press defendant on whether he wanted legal representation, and defendant replied, "I am telling you I'm ready for trial, and I do not want a Public Defender." The court set the trial date for September 7, 2021.

¶ 33    The jury trial commenced on September 7, 2021. At trial, Murray testified that she lived in a townhouse with her three children. Defendant was her boyfriend at the time, and she invited him and her friend, Davis, over for a New Year's Eve gathering around 8 p.m. They were downstairs drinking and sitting around a table playing cards while her children remained upstairs in their rooms. After midnight, defendant wanted to go pick up his friend, a man only referred to as Morris. Defendant and Murray stopped at the liquor store to get more beverages and picked up Morris before returning to the townhome.

¶ 34    Around 3:30 a.m., an argument started between defendant, Murray, and Morris. Defendant became upset with Murray. Morris asked if he could go upstairs to sleep, and Murray directed him to a bedroom. After directing Morris to a bedroom, Murray sat at the table and could feel defendant staring at her. Defendant then jumped on top of her, placing his hands around her neck and choking her. Davis pulled defendant off Murray, and defendant began to choke her in a manner similar to how he choked Murray. Davis grabbed a wooden candlestick that had fallen off the table and hit defendant in the head while he continued to choke her. Murray jumped on top of

defendant and pulled him off Davis. One of Murray's sons came downstairs and was directed to call the police. Defendant broke free, realized he was bleeding, and retrieved two knives. Morris came downstairs and told defendant they should leave because the police were on their way. Defendant declined. Davis and Morris ran out the front door, and Murray ran to a bathroom. Murray exited the bathroom to check on her sons and was stabbed in the right arm and then punched in the face by defendant. Defendant then approached one of Murray's sons and cut him on his hand. Defendant threw down the knives and walked out the door.

¶ 35　　　　Murray's two sons testified that they were upstairs playing video games when they heard a commotion downstairs. Once downstairs, they saw Murray pulling defendant off Davis. They armed themselves with a bat and an ice scraper. One of the boys was cut on the hand by defendant. An emergency medical technician and police officers from the Springfield Police Department also testified to the events of that evening. Davis did not testify.

¶ 36　　　　Testifying in his defense, defendant stated he was at Murray's house for a New Year's Eve gathering. Shortly after his friend Morris went to bed, he attempted to go upstairs, but Murray would not allow him to do so. Davis joined in and they both attacked him. At some point, the pair rendered defendant unconscious. When he regained consciousness, he was on the floor and bleeding from his head. Defendant said he was "tussling" with Davis and in a "fight" with Murray and Davis. He was unarmed, but Murray had a knife, and one of her sons had a bat. Defendant did not know how the injuries suffered by Murray and Davis occurred. Defendant stated, "And I'm telling you, I'm innocent. I'm telling you I did not commit these acts. *** I'm like , man, I didn't do that." Directly addressing the jury, he said, "So, this is the thing. Uhm, I— I'm innocent. I didn't commit the act of choking somebody. It's—definitely not stabbing two people. I was—I was the victim."

¶ 37    Following the close of evidence, defendant requested that the trial court issue a self-defense instruction to the jury. The State argued the jury instruction was improper because defendant denied committing the charged acts. The court refused to issue the requested instruction.

¶ 38    The jury found defendant guilty on all counts except the aggravated battery charge alleging the strangulation of Davis. Defendant later received concurrent sentences of eight years on the two aggravated battery charges and six years on the aggravated domestic battery, with the domestic battery charge merging.

¶ 39    This appeal followed.

¶ 40                                    II. ANALYSIS

¶ 41    On appeal, Defendant argues that (1) his statutory and constitutional rights to a speedy trial were violated by the delays he experienced in proceeding to trial, (2) he was improperly admonished when waiving his right to counsel, (3) the trial court erred in refusing to instruct the jury on self-defense, and (4) the cumulative impact of the errors during the proceedings deprived him of a fair trial. The State argues that defendant has either waived or forfeited all the arguments presented by failing to advance them in the trial court.

¶ 42                                    A. Speedy Trial

¶ 43    Defendant initially argues that we should reverse his convictions and vacate his sentence because he was denied his statutory and constitutional rights to a speedy trial. Similar to the remaining arguments presented on appeal, defendant acknowledges that he failed to present a motion to dismiss based on a violation of his speedy trial rights either before trial or in a posttrial motion. Nonetheless, he asks this court to review his claims under the plain error doctrine. Defendant also acknowledges the Illinois Supreme Court issued a series of orders in the early months of the COVID-19 pandemic, tolling the speedy trial term. The Second District Appellate

Court recently addressed the argument that this state's high court lacked the power to toll the speedy trial period, finding the argument without merit as to a statutory claim. *People v. Mayfield*, 2021 IL App (2d) 200603, ¶ 11, *appeal allowed*, No. 128092 (Ill. Mar. 30, 2022). Defendant claims that case was wrongly decided and wishes to preserve his claims pending the supreme court's disposition of the matter.

¶ 44     The State argues defendant waived his statutory speedy trial argument by failing to file a proper motion below. It further contends that *Mayfield* was correctly decided, most of the delay in this case is attributable to defendant's numerous pretrial motions, plain error review does not apply, and plain error review fails because the evidence was not closely balanced.

¶ 45                    1. *Statutory Right to a Speedy Trial*

¶ 46     A defendant has both the constitutional and statutory right to a speedy trial. U.S. Const., amend. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5(a) (West 2020). The statutory and constitutional rights are not coextensive. *People v. Gooden*, 189 Ill. 2d 209, 217 (2000). The Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2020)) provides, in pertinent part, that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant."

¶ 47     The plain error doctrine allows a reviewing court to bypass the normal principles of forfeiture and review unpreserved errors when "(1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so egregious that it affected the fairness of the defendant's trial and challenged the

integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 48 In relation to defendant's statutory speedy trial claim, the State argues we should decline to review the claim for one simple reason: waiver. In *People v. Pearson*, 88 Ill. 2d 210, 219 (1981), our supreme court recognized that any motion for discharge due to a violation of a defendant's statutory speedy trial rights must be made prior to trial. The legislature has seen fit to provide for the *waiver* of the statutory protections of the speedy trial statute when a defendant fails to do so, stating:

> "(b) The court shall require any motion to dismiss to be filed within a reasonable time after the defendant has been arraigned. Any motion not filed within such time or an extension thereof shall not be considered by the court and the grounds therefor *** are *waived*." (Emphasis added.) 725 ILCS 5/114-1 (West 2020).

¶ 49 We note there is an important, often overlooked, distinction between the doctrines of "forfeiture" and "waiver." Our supreme court has stated:

> "As explained by the United States Supreme Court in *United States v. Olano*, 507 U.S. 725 *** (1993),'Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of the right, waiver is the "intentional relinquishment or abandonment of a known right." ' " *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005) (quoting *Olano*, 507 U.S. at 733, quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

¶ 50 "Such a distinction is important because if defendant has waived the issue, we need not review his claim for plain error." *People v. Scott*, 2015 IL App (4th) 130222, ¶ 21. Despite this

authority, our supreme court has declined to review appellate court caselaw finding a waived statutory speedy trial violation reviewable as second-prong plain error. See *People v. Hartfield*, 2022 IL 126729, ¶ 33 ("Putting aside the question of whether defendant has 'forfeited' or 'waived' his speedy trial right and the attendant question of whether plain error review is appropriate, we hold that no error occurred."); *People v. Staake*, 2017 IL 121755, ¶ 33 (same).

¶ 51 Recognizing our supreme court's holdings, we put aside defendant's failure to properly raise this argument in the trial court. Rather, we decline to review defendant's contention of error under the plain error doctrine for a more fundamental reason. To qualify for review under either prong of the doctrine, the error complained of must be clear or obvious. See *Olano*, 507 U.S. at 734. "The plain error doctrine is not a backdrop to catch merely arguable issues that could have been raised in the trial court. The error had to be manifest or patent." *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 17.

¶ 52 Defendant's statutory claim hinges on the interpretation and propriety of the Illinois Supreme Court's orders during the height of the COVID-19 pandemic. In March 2020, the high court entered an order authorizing circuit courts to continue criminal trials. See *In re Illinois Courts Response to COVID-19 Emergency/Impact on Trials*, Ill. S. Ct. M.R. 30370 (Mar. 20, 2020). The emergency order was amended in April to clarify that "continuances *shall* be excluded from speedy trial computations" and statutory time restrictions "*shall* be tolled until further order of this Court." (Emphases added.) *In re Illinois Courts Response to COVID-19 Emergency/Impact on Trials*, Ill. S. Ct. M.R. 30370 (Apr. 7, 2020). In June 2021, the order was amended once again to clarify that the days prior to the court's March 2020 order and the day of and days following October 1, 2021, were to be included in the calculations. *In re Illinois Courts Response to COVID-19 Emergency/Impact on Trials*, Ill. S. Ct. M.R. 30370 (June 30, 2021).

¶ 53        The Second District Appellate Court recently rejected an argument similar to the one defendant presents, finding that under the authority of the supreme court order, the general continuance by the chief judge of the circuit tolled the speedy trial term and "[n]othing in the language of the supreme court order required any action by the trial court to toll the speedy trial term." *Mayfield*, 2021 IL App (2d) 200603, ¶ 16. In addressing a properly preserved argument that the supreme court violated the separation of powers doctrine by tolling the speedy trial term, this court found the reasoning in *Mayfield* instructive, stating:

> "To the extent the court's response conflicted with the speedy trial statute, the court's orders must prevail in light of its basic authority over the procedural administration of the courts. See [*Kunkel v. Walton*, 179 Ill. 2d 519, 529 (1997)] ('The principle that court rules will supersede inconsistent statutory provisions is connected to the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments \*\*\*.' (Internal quotation marks omitted)). Accordingly, we reject defendant's argument." *People v. Jones*, 2022 IL App (4th) 200638-U, ¶ 41, *pet. for leave to appeal pending*, No. 128618 (filed June 21, 2022).

¶ 54        Turning to the matter before us, it is apparent that an error is not clear or obvious when the law surrounding the error only becomes clear when the applicable law is clarified on appeal. See *In re M.W.*, 232 Ill. 2d 408, 431 (2009) (citing *Olano*, 507 U.S. at 734). The trial court in this case was operating in conformity with the mandate from the Illinois Supreme Court; even if an error resulted, it was not clear or obvious at the time. On appeal, defendant merely presents arguable issues in respect to his statutory claim that could have been raised in the trial court, as opposed to manifest or patent errors. We are unable to deem any error resulting from the trial

court's conformance with the supreme court's administrative orders as clear or obvious. Accordingly, we honor defendant's procedural forfeiture in relation to his statutory speedy trial claim. See *Hammons*, 2018 IL App (4th) 160385, ¶¶ 17-18.

¶ 55                           2. *Constitutional Right to a Speedy Trial*

¶ 56           Defendant also claims his constitutional right to a speedy trial was violated. In doing so, we note that defendant fails to mention any of the factors involved in the difficult and sensitive balancing process of evaluating this argument. Courts of review in this state have repeatedly emphasized that they are entitled to have issues clearly defined, pertinent authority cited, and cohesive arguments presented. See, *e.g.*, *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 48. Arguments that are not sufficiently briefed and supported with relevant authority do not satisfy supreme court rules and are forfeited for purpose of appeal. *Id.* Consequently, defendant has forfeited this argument on appeal.

¶ 57           Even ignoring forfeiture, defendant's constitutional argument suffers from the same deficiencies as his statutory argument. Defendant contends that while he failed to raise this argument below, we can review the claim pursuant to the constitutional-issue exception to forfeiture. This exception to procedural forfeiture only applies where "constitutional issues were properly raised at trial and may be raised later in a postconviction petition." *People v. Cregan*, 2014 IL 113600, ¶ 16. Defendant failed to *properly* raise this issue in the trial court. That leaves defendant with review under the plain error doctrine, where the error he alleges is not manifest or patent but would only become apparent following the application of a multifactor balancing test considered against the backdrop of the surrounding circumstances. See *Hammons*, 2018 IL App (4th) 160385, ¶¶ 17-18.

¶ 58 Nonetheless, the argument is without merit. When determining whether a defendant's constitutional right to a speedy trial has been violated, there are four factors that must be balanced: (1) the defendant's assertion of the right; (2) the length of the delay; (3) the reasons for the delay; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *People v. Bazzell*, 68 Ill. 2d 177, 182 (1977). Even after considering the *Barker* factors, " 'courts must still engage in a difficult and sensitive balancing process.' " *People v. Crane*, 195 Ill. 2d 42, 60 (2001) (quoting *Barker*, 407 U.S. at 533). Each factor must be weighed and considered against the circumstances of the case as reflected in the record. *Bazzell*, 68 Ill. 2d at 182-83. However, "[a]ll four factors are closely related," and no one factor is dispositive. *Crane*, 195 Ill. 2d at 52.

¶ 59 Generally, a court will not perform the balancing test laid out in *Barker* unless the delay approaches one year. *People v. Bradshaw*, 2020 IL App (3d) 180027, ¶ 28 (citing *Crane*, 195 Ill. 2d at 52-53). A review of the record in this case shows that defendant was incarcerated well beyond a year before he was brought to trial, "triggering" a full application of the balancing test. *Crane*, 195 Ill. 2d at 52-53.

¶ 60 Turning to the remaining factors, it is abundantly clear that defendant asserted his right to a speedy trial early and often. Nonetheless, defendant failed to advance any claims that his right to a speedy trial was violated pursuant to a motion to dismiss. Accordingly, the issue was never properly before the trial court to grant defendant relief.

¶ 61 The reason for the delay rests with two culprits: the COVID-19 pandemic and defendant's incessant pretrial motion practice. In analyzing delay under *Barker*, different weights are assigned based on the reasons for the delay. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009). "Deliberate delay 'to hamper the defense' weighs heavily against the prosecution." *Id.* (quoting

*Barker*, 407 U.S. at 531). However, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531.

¶ 62        Defendant is effectively arguing that the Illinois Supreme Court's orders requiring circuit courts of the state to take appropriate actions in the face of the pandemic do not constitute a valid reason to delay his trial. We disagree. A review of the legal landscape addressing similar arguments reveals that other courts have upheld their authority to act in the face of the pandemic. See, *e.g.*, *State v. Tesch*, 978 N.W.2d 107 (Iowa Ct. App. 2022) (collecting cases); *State v. Paige*, 977 N.W.2d 829, 840 (Minn. 2022); *Vlahos v. State*, 2022 WY 129, ¶ 57, 518 P.3d 1057 (Wyo. 2022); *Raspperry v. State*, 519 P.3d 1265 (Nev. 2022). The common theme of the weight of authority is that neither the State nor the defendant is responsible for the delay in proceeding to trial in the face of the public safety concerns created by the COVID-19 pandemic, as such delays are unavoidable. We agree with this reasoning and find that continuances related to the pandemic are "valid reasons" as contemplated in *Barker*.

¶ 63        A review of the record shows that the Sangamon County circuit court was operating in conformance with the Illinois Supreme Court's COVID-19 administrative orders. In an attempt to continue moving cases through the justice system, it created a priority trial docket to try the oldest criminal cases first and grant those cases precedence. Several of the continuances complained of by defendant were occasioned by the pandemic and the administrative orders that followed. Another continuance was occasioned by two of the witnesses contracting COVID-19 and becoming unavailable for trial.

¶ 64        Defendant implies that the trial court's delays were unrelated to a "transient public health crisis" where, as in the county at issue, "criminal trials were under way." Defendant appears to look at the issue as being binary: at any given time, either COVID-19 prevented all trials, or it

prevented none. The court here made a good record of the reasons why *fewer* cases could be tried during the pandemic, including juror spacing limitations that meant that only one courtroom was available for trials. See *Sangamon County Courthouse Procedures for COVID-19 Coronavirus*, Sangamon County Ct. Adm. Order No. 2020-13 (June 30, 2020), https://sangamonpassports.org/application/files/2615/9369/6429/CourtsJuly2020.pdf [https://perma.cc/WV5W-P8QS]; *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 12 n.3 (noting courts may take judicial notice of documents from readily verifiable sources of indisputable accuracy). With fewer court resources available for conducting jury trials, the pandemic was clearly a major reason defendant's trial was delayed. The restrictions and precautions instituted by the Sangamon County circuit court are similar to those implemented by other courts. See *People v. Williams*, 2020 IL App (2d) 200455.

¶ 65        Further, the trial court was repeatedly forced to address and rule on successive and amended pleadings from defendant. Defendant in one breath would demand a speedy trial on the soonest possible date, only to submit a dispositive motion, request a hearing date on that motion, threaten a motion to reconsider, or threaten an interlocutory appeal moments later. We agree with the State that beyond the delays occasioned by the pandemic, most of the remaining delay was occasioned by defendant's motion practice.

¶ 66        In considering the prejudice to defendant, we give this factor minimal weight. Initially, defendant failed to argue the delay prejudiced his defense. "In this case, moreover, delay is a two-edged sword." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). The State bears the burden of proving its case beyond a reasonable doubt, and the passage of time may result in the State failing to carry this burden. *Id.* Here, the delay may have benefited defendant, as the State

was unable to produce one of the victims to testify; this ultimately resulted in defendant's acquittal on one of the charges.

¶ 67 After weighing each factor in light of the circumstances as reflected in the record, we find defendant's constitutional right to a speedy trial was not violated. *Bazzell*, 68 Ill. 2d at 182-83.

¶ 68 3. *Compliance with Supreme Court Orders on COVID-19 Delays*

¶ 69 At oral argument, defendant also argued that only the chief judge of the judicial circuit could invoke the speedy trial exception promulgated by the supreme court. However, this argument fails to appropriately track the progress and evolution of the supreme court's orders on this topic over time. On March 17, 2020, the supreme court ordered a serious reduction of all activities in the circuit courts. *In re Illinois Courts Response to COVID-19 Emergency*, Ill. S. Ct. M.R. 30370 (Mar. 17, 2020). It is apparent that the Sangamon County circuit court was in this period of general shutdown when defendant appeared before the court on April 3, 2020, and May 18, 2020. At this point in time, defendant's continuances were effectively required by the supreme court's March 17, 2020, order. The supreme court noted in its April 7, 2020, order that the "Chief Judges of each circuit may continue trials until further order of this Court" without affecting the statutory speedy trial period. *In re Illinois Courts Response to COVID-19 Emergency/Impact on Trials*, Ill. S. Ct. M.R. 30370 (Apr. 7, 2020). This is a reference to the chief judge's blanket continuance of trials; it does not require the chief judge to enter a continuance order in every affected case.

¶ 70 On May 20, 2020, the supreme court entered an updated order which allowed circuit courts to emerge from the shutdown where safe to do so and "according to a schedule to be adopted for each county by the chief judge in each circuit." *In re Illinois Courts Response to COVID-19*

*Emergency*, Ill. S. Ct. M.R. 30370 (May 20, 2020). In returning to a more normal schedule of activity, the circuit courts were directed to "continue, to the extent possible, to allow for appropriate social distancing ***." *Id.* Here, the trial court's comments at the October 2, 2020, status hearing, give insight into how this concern was addressed in Sangamon County: "we do not have more than one courtroom available. We only have one courtroom that is set[ ]up that allows for the social distancing and all that."

¶ 71 Consequently, even after the Sangamon County circuit court began to conduct jury trials again, the county's normal volume of cases—including those that might have accumulated during the shutdown ordered in March—were forced through the narrow gate of only one available courtroom. Fortunately, exactly this circumstance was addressed in the supreme court's order of May 20, 2022, as the supreme court provided that the tolling of the speedy trial period was accomplished not just when the chief judge suspended all trials in the judicial circuit, but also when "a trial is delayed when the court determines proper distancing and facilities limitations prevent the trial from proceeding safely." *In re Illinois Courts Response to COVID-19 Emergency*, Ill. S. Ct. M.R. 30370 (May 20, 2020). Whether "such limitations necessitated" a delay in a particular case was not a determination to be made by the chief judge, but by the "judge in the case." *Id.*

¶ 72 The trial judge here made clear on the record that limited courtroom availability due to the pandemic was behind the need for continuances. The earlier delays were effectively directed by the supreme court's March 17, 2020, shutdown order. We find that the delays in this case, as well as the resulting tolling of the speedy trial period, were properly accomplished in compliance with the supreme court's orders.

¶ 73 B. Rule 401(a) Admonishments

¶ 74 Next, defendant argues that his conviction cannot stand because the admonishments he received when proceeding *pro se* "fell far short of complying with the requirements of Rule 401(a)." The State argues that failure to comply with the rule does not result in a *per se* invalid waiver of counsel, but rather the question is whether the waiver was knowingly and intelligently made.

¶ 75 "Illinois Supreme Court Rule 401(a) governs the trial court's acceptance of a defendant's waiver of counsel." *People v. Reese*, 2017 IL 120011, ¶ 61. The rule provides:

> "(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> (1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>
> (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 76 The right to counsel is a fundamental right, and the purpose of Rule 401(a) is to ensure the defendant's waiver of counsel is knowingly and intelligently made. *People v. Haynes*, 174 Ill. 2d 204, 241 (1996). Nonetheless, defective or even omitted admonishments do not *per se*

invalidate such a waiver, as strict, technical compliance with the rule is not required. See *People v. Wright*, 2017 IL 119561, ¶ 41; *Haynes*, 174 Ill. 2d at 236. Rather, each case regarding whether there has been a knowing and intelligent waiver of the right to counsel is *sui generis*, requiring an evaluation of the record as a whole, including the background, experience, and conduct of the defendant. *People v. Lesley*, 2018 IL 122100, ¶ 51; *People v. Baez*, 241 Ill. 2d 44, 116 (2011). Despite a court's failure to mechanically follow the rule, when an examination of the record indicates that (1) the waiver of counsel was made knowingly and intelligently and (2) the trial court's admonishment did not prejudice the defendant's rights, reversal is unwarranted. See *Reese*, 2017 IL 120011, ¶¶ 62, 65; *People v. Redmond*, 2018 IL App (1st) 151188, ¶ 25; *contra People v. Martin*, 2021 IL App (4th) 180267, ¶ 37 ("However, we are required to mechanically apply Rule 401 here.").

¶ 77　　　　Defendant's claim for relief on review fails because the record shows that his waiver was given knowingly and intelligently. Further, defendant was not prejudiced by any incompleteness in the trial court's admonitions prior to allowing him to proceed without counsel. Defendant was previously admonished twice in accordance with Rule 401(a), and he was repeatedly admonished regarding the charges against him and the minimum and maximum sentencing he faced. The record also demonstrates he was continually afforded his right to counsel. The day before trial, the court asked whether defendant wanted the public defender reappointed, to which he replied, "I'm telling you that I'm ready for trial, and I do not want a Public Defender."

¶ 78　　　　Defendant cites *People v. Langley*, 226 Ill. App. 3d 742 (1992), *People v. Bartholomew*, 2015 IL App (4th) 130575, and *People v. Seal*, 2015 IL App (4th) 130775, for the proposition that prior admonishments are insufficient for substantial compliance with Rule 401(a). A closer examination of the cases reveals the true import of their holdings, which was succinctly

presented by the First District Appellate Court in *People v. Moore*, 2021 IL App (1st) 172811, ¶ 31:

> "There must be limits to the notion of 'substantial compliance.' We step back and emphasize that defendant was never given any admonishments whatsoever. Yes, we can comb the record for isolated comments after defendant waived counsel, as the State does, and try to scrap together bits and pieces to construct a case that defendant knew all three items of information at some point before trial—the nature of the charges, the maximum and minimum term of years he faced, and his right to counsel—but then what is left of Rule 401? Nothing, essentially." (Emphasis omitted.)

¶ 79　　　　The cases cited by defendant and the reasoning leading to their holdings are inapposite in this case. Defendant in this matter received admonishments in accordance with Rule 401(a) twice during the pretrial portion of his case. The admonishments the third time were imperfect, but the trial court took care to admonish defendant on the nature of his charges, the penalties he faced, and the pitfalls of proceeding *pro se* numerous times before trial. On the eve of trial, the court offered defendant one last chance to have the public defender appointed. Defendant declined.

¶ 80　　　　Defendant also cites *Martin*, 2021 IL App (4th) 180267, claiming we have no choice but to reverse and remand for a new trial. In *Martin*, prior to trial, the defendant switched between being represented by counsel and proceeding *pro se* several times, receiving admonishments pursuant to Rule 401(a) numerous times. *Id.* ¶ 34. Following a jury trial, the defendant was found guilty, and the matter proceeded to the sentencing stage. *Id.* ¶ 13. The trial

court asked the defendant if he wanted to continue to proceed *pro se* during sentencing, to which the defendant answered in the affirmative. *Id.* ¶ 14. At subsequent hearings prior to sentencing, the defendant requested and received the appointment of the public defender only to subsequently ask to proceed *pro se*. *Id.* ¶¶ 14-15. The trial court did not admonish the defendant pursuant to Rule 401(a) prior to allowing the defendant to waive counsel. *Id.* ¶ 15. On appeal, the defendant argued the trial court failed to admonish him pursuant to Rule 401(a) during the sentencing portion of the proceedings. *Id.* ¶ 20. Relying on an exception to the continuing waiver rule, the appellate court found that "Rule 401(a) admonishments must be provided ' "where a defendant waives counsel, proceeds *pro se*, requests counsel for a distinct stage of the proceedings, receives counsel, and then decides to waive counsel *again*." ' " (Emphasis in original.) *Id.* ¶ 36 (quoting *People v. Washington*, 2016 IL App (1st) 131198, ¶ 60, quoting *People v. Cleveland*, 393 Ill. App. 3d 700, 712 (2009)). The court held that, despite finding that the defendant "knowingly and voluntarily waived his right to counsel," it was "required to mechanically apply Rule 401." *Id.* ¶ 37.

¶ 81 Procedurally, this case does not involve an exception to the continuing waiver rule and does not involve admonishments throughout varying critical stages of the proceedings; the challenge here focuses on only the pretrial portion of the proceedings. Factually, unlike *Martin*, defendant was repeatedly admonished pursuant to Rule 401(a) and offered counsel during that critical stage. *Martin* is distinguishable and does not control the outcome of this case. See *People v. Palmer*, 104 Ill. 2d 340, 345-46 (1984) ("[T]he precedential scope of a decision is limited to the facts before the court."). To the extent the language in *Martin* suggests the rule must be "mechanically" applied and requires strict and technical compliance, the supreme court has made clear that is not the case. *Wright*, 2017 IL 119561, ¶ 41; *Reese*, 2017 IL 120011, ¶¶ 62, 65. We decline to apply the reasoning in *Martin* to the case at bar. See *O'Casek v. Children's Home & Aid*

*Society of Illinois*, 229 Ill. 2d 421, 440 (2008) (noting we are not required to follow the decisions of other districts of the appellate court or our own prior decisions).

¶ 82　　　　Defendant's own statements and conduct throughout pretrial proceedings show his waiver of counsel was knowing and intelligent. The trial court admonished defendant at least twice that, if he wished to be represented by counsel, he would have to relinquish the ability to file motions; otherwise, he would need to proceed *pro se*. Nonetheless, defendant continued to file motions while represented by counsel, leading private counsel to withdraw from the case after defendant filed a motion in counsel's name without approval. This conduct directly conflicts with the argument on appeal that defendant did not knowingly and intelligently waive his right to counsel. See *Lesley*, 2018 IL 122100, ¶ 59 (finding that a defendant's continued refusal to cooperate with defense counsel constituted a knowing and intelligent election to proceed *pro se*). Further, at the outset of this case, defendant repeatedly and vociferously expressed his displeasure with counsel and requested to proceed *pro se* on a serial basis. Moreover, defendant's background and experience with the criminal justice system, evidenced by his 12 prior criminal cases, shows that his waiver of counsel was intelligently made. Even after defendant's federal defender explained the consequences of proceeding without counsel and reached out to the court on his behalf, defendant still declined the offer of appointed counsel. On this record, it is clear defendant's waiver of counsel was knowingly and intelligently made and that the court's admonishments did not prejudice defendant's rights.

¶ 83　　　　　　　　　　　C. Jury Instruction

¶ 84　　　　Defendant argues that the trial court erred in denying his request for a self-defense instruction, as there was sufficient evidence to warrant the jury instruction.

¶ 85        A criminal defendant is entitled to a jury instruction on self-defense if "very slight" or "some" evidence exists to support the theory of self-defense. *People v. Everette*, 141 Ill. 2d 147, 157 (1991). However, the *sine qua non* of raising the issue of self-defense requires the defendant to admit to the crime as the basis for his reasonable belief that the force was necessary. *People v. Lahori*, 13 Ill. App. 3d 572, 577 (1973). We review whether there is sufficient evidence in the record to warrant giving the jury a particular instruction *de novo*. *People v. Washington*, 2012 IL 110283, ¶ 19.

¶ 86        Relying on the evidence presented by the State, defendant argues "it cannot be seriously disputed that [defendant] used force to fend off the attacks." The State claimed defendant engaged in the following conduct as the basis of the charges against him: strangling Murray, stabbing Murray and her son J.H. with a knife, and strangling Davis.

¶ 87        During his testimony, defendant denied committing the charged acts. Specifically, he stated, "And I'm telling you, I'm innocent. I'm telling you I did not commit these acts. *** I'm like , man, I didn't do that." When directly addressing the jury defendant said, "So, this is the thing. Uhm, I—I'm innocent. I didn't commit the act of choking somebody. It's—definitely not stabbing two people. I was—I was the victim." Defendant's argument on appeal that he was entitled to a self-defense instruction after denying the charged conduct is in direct contradiction to an entire body of appellate caselaw. See, *e.g.*, *People v. Diaz*, 101 Ill. App. 3d 903, 915 (1981) (finding no error where the defendant denied committing the acts and State's evidence did not show the use of force was justified); *People v. Hawkins*, 88 Ill. App. 3d 178, 182 (1980) (finding that, where the defendant denied committing the charged act, trial court did not err in refusing to tender self-defense instruction); *Lahori*, 13 Ill. App. 3d at 577. The trial court properly refused to provide the self-defense instruction.

¶ 88          Defendant claims his testimony that he was in a "fight," "tussling," and "locked in" with Davis and Murray combined with the State's evidence, serves as sufficient evidence to warrant the self-defense instruction. We disagree, as the conduct underlying the charges was not mere physical contact but specific acts. Counts I and IV of the indictment alleged that defendant "strangled" Murray and Davis, respectively; counts II and III alleged defendant stabbed two of the victims with "a deadly weapon, being a knife"; and count V alleged that defendant "strangled and stabbed" Murray. Defendant's position at trial was that he was innocent and did not commit any of these acts, not that he was acting in self-defense.

¶ 89                                D. Cumulative Error

¶ 90          Finally, defendant claims that, even if each alleged error did not amount to plain error, the cumulative effect of the errors denied him a fair trial. Having found no clear or obvious error, we reject defendant's claim of cumulative error. See *People v. Doyle*, 328 Ill. App. 3d 1, 15 (2002).

¶ 91                                III. CONCLUSION

¶ 92          For the reasons stated, we affirm the judgment of the trial court.

¶ 93          Affirmed.

## *People v. Johnson*, 2023 IL App (4th) 210662

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 20-CF-4; the Hon. Raylene Grischow, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Darrel F. Oman, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Daniel K. Wright, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and James Ryan Williams, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |